**Gary Leroy WEIDNER and Liberty Cab Company, Inc., Appellants,**

v.

**Matilde S. SANCHEZ, Appellee.**

No. 14–98–00078–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 17, 2000.

Rehearing Overruled March 23, 2000.

3. Hirad did not contend the State's case, "as presented," failed to prove the offense of deadly conduct.

Maurice L. Bresenhan, Jr., Pascal Paul Piazza, Houston, for appellants.

Thomas N. Thurlow, Houston, Janine Howard Gorell, Sugar Land, for appellees.

Panel consists of Justices MAURICE E. AMIDEI, EDELMAN, and WITTIG.

## OPINION

MAURICE E. AMIDEI, Justice.

Appellants, Gary Leroy Weidner and Liberty Cab Company, Inc., appeal from a judgment in a personal injury suit in favor of appellee, Matilde S. Sanchez. In eight points of error, appellants assert the trial court erred because it (1) lacked jurisdiction over the cause; (2) denied a motion for mistrial; (3) overruled a motion for a directed verdict; (4) granted judgment on erroneously submitted jury questions; (5) denied post-verdict motions to vacate the judgment, for judgment N.O.V., and for a new trial; (6) entered judgment where the evidence is legally and factually insufficient to support the verdict; (7) granted Sanchez leave to file an amended petition; (8) made findings of fact; and, (9) awarded future damages and prejudgment interest on future damages. We affirm.

Liberty Cab Company contracted with Houston Metropolitan Transit Authority (Metro) to transport infirm and handicapped passengers. While transporting Sanchez to her home from her doctor's office pursuant to this contract, Liberty cab driver Gary Weidner ran a stop sign and collided with another vehicle. Sanchez left the scene of the accident and walked to her home less than a block away. Later in the day, Sanchez's daughter took her to the emergency room of Parkway Hospital where she was examined and released.

A few days later, Sanchez sought treatment from Dr. Justo Avila, a board-certified orthopedic surgeon. Avila treated Sanchez for approximately six months. During this time, Sanchez filed a personal injury suit against Weidner and Liberty Cab in a Harris County civil court at law alleging actual damages of $95,000. Trial was set for August, 1997. In early May, Avila testified by deposition that Sanchez's injuries were permanent. Later that

month Sanchez amended her petition to assert actual damages of $210,000.

When the statutory county court called the case, appellants challenged the trial court's jurisdiction and the trial court carried the jurisdictional question with the case. After a trial on the merits, the jury found Weidner and Liberty Cab jointly and severally liable for Sanchez's injuries and awarded her damages in excess of the actual damages she sought in her amended petition. The county court entered judgment on the verdict. Appellants filed motions challenging the jurisdiction of the county court and seeking to set aside the judgment or to receive a new trial, which the trial court denied.

## I. JURISDICTION

In their first point of error, appellants contend the Harris County court at law erred in accepting a verdict and granting a final judgment because it lacked subject matter jurisdiction over the case. Jurisdiction is conferred by the Texas Constitution and statutory enactments, together with the existence of facts necessary for the court to exercise its jurisdiction. *Lee v. El Paso County*, 965 S.W.2d 668, 671 (Tex.App.—El Paso 1998, pet. denied). Whether a court has jurisdiction to hear a case is a question of law. *Id.* If a court lacks subject matter jurisdiction, it has no discretion but to dismiss the case. *American Pawn and Jewelry, Inc. v. Kayal*, 923 S.W.2d 670, 672 (Tex.App.—Corpus Christi 1996, writ denied). We presume in favor of a trial court's jurisdiction unless lack of jurisdiction affirmatively appears on the face of the petition. *Lee*, 965 S.W.2d at 671. The party seeking dismissal for lack of jurisdiction maintains the burden of proof. *Id.*

Sections 25.0003 and 25.1032 of the Texas Government Code, respectively, are the general grant of jurisdictional authority to statutory county courts and the specific grant of jurisdictional authority to Harris County civil courts at law. *See* TEX. GOV'T CODE ANN. §§ 25.0003; 25.1032

(Vernon 1988 & Supp.1999); *Continental Coffee Products Co. v. Cazarez*, 937 S.W.2d 444, 447–49 (Tex.1996). "Together, these provisions grant Harris County civil courts at law concurrent jurisdiction with district courts in civil cases in which the amount in controversy falls within a certain jurisdictional dollar limit for statutory county courts." *Continental Coffee Products Co.*, 937 S.W.2d at 448. Specifically, the jurisdictional limit of the civil courts at law is more than $500 but less than $100,000, excluding interest, statutory or punitive damages and penalties, and attorney's fees and costs. *See* TEX. GOV'T CODE ANN. § 25.0003(c)(1) (Vernon Supp.1999).

Appellants contend the record and Sanchez's petitions are proof that she filed the suit in the county court at law in bad faith, thus depriving the county court of its jurisdiction over the cause. In the alternative, appellants contend the trial court lacked jurisdiction because Sanchez exceeded the jurisdictional limit by requesting prejudgment interest and because the trial court dismissed the case after the trial on the merits.

### A. Bad Faith

Appellants contend Sanchez's trial attorney filed the original petition in bad faith, without fully investigating the extent of Sanchez's injuries. Appellants maintain Sanchez knew or should have known at the time she filed her original petition that her injuries were permanent and alleged the greater damages in her original petition. Appellants further assert Sanchez's attorney pleaded an arbitrary $95,000 value simply to secure jurisdiction in a statutory county court adhering to a pattern of at least forty-one other suits filed by Sanchez's attorney valuing the injury at $95,-000.

"Jurisdiction is based on the allegations in the petition about the amount in controversy." *Continental Coffee Products, Co.*, 937 S.W.2d at 449. Generally, once a trial court lawfully and properly

acquires jurisdiction, "no later fact or event can defeat the court's jurisdiction." *Id.* Jurisdiction continues even if the plaintiff subsequently amends the petition by increasing the amount in controversy above the court's jurisdictional limits, if the additional damages accrued because of the passage of time. *See id.* "Where the plaintiff's original and amended petitions do not affirmatively demonstrate an absence of jurisdiction, a liberal construction of the pleadings in favor of jurisdiction is appropriate." *Id.* Moreover, "[i]n the absence of pleading and proof that the allegations in a plaintiff's original petition have been made fraudulently or in bad faith, the fact that the plaintiff's amended petition alleges damages in excess of the court's jurisdictional limit does not necessarily deprive the court of its jurisdiction over the case." *Cantu v. J. Weingarten's, Inc.* 616 S.W.2d 290, 291 (Tex.Civ.App.-Houston [1st Dist.] 1981, writ ref'd n.r.e.); *see also Continental Coffee Products Co.*, 937 S.W.2d at 449.

In this case, the record does not affirmatively establish that Sanchez and her trial attorney knew or should have known her injuries were permanent at the time she filed her original petition. The record shows that Avila treated Sanchez from April 6, 1995, to September 28, 1995 for an acute cervical and lumbar sprain with spondylosis. Avila noted in his initial report that x-rays of Sanchez's thoracic spine showed arthritic changes with osteoporosis and x-rays of the cervical spine showed reversal of the cervical curve and narrowing of C5–6. Avila recommended that Sanchez wear a brace and undergo physical therapy. At the time Sanchez filed her original petition on July 24, 1995, she was still complaining of pain in her neck and back, still seeing Avila on a regular basis, and still undergoing physical therapy.

In his deposition on May 14, 1997, Avila, for the first time, said that he believed Sanchez's injury was permanent because of her age, and that she would continue to suffer pain because of the injury. Avila attested that from the initial examination he determined Sanchez had arthritis and the injury Sanchez sustained from the motor vehicle accident aggravated the arthritis. Even though Avila made this determination from x-rays taken in 1995, Avila said additional x-rays were unnecessary because progressive deterioration of the spine or further aggravation of the arthritis would take years before showing up on the x-rays. He said, "If she still complained of a lot of pain at that, five months of taking care of her, I would do more tests probably, this x-ray, like you say.... I would do MRI, CAT scan, maybe, and things like that, yeah." Avila did not treat Sanchez after September 28, 1995.

Likewise, neither the original petition nor the amended petition affirmatively demonstrate an absence of jurisdiction. In her amended petition, Sanchez averred that the increase in actual damages over the jurisdictional amount accrued due to the passage of time and that she did not know the full extent of her injuries at the time she filed the original petition. At the pretrial hearing on appellants' plea to the jurisdiction, Sanchez's trial attorney argued that when the original petition was filed, Sanchez was expected to get well, but she did not get well. Sanchez's trial attorney said he did not know Avila considered Sanchez's injuries to be permanent until he took Avila's deposition, after which he filed the amended petition.

At the post-trial hearing on the motion to enter judgment, appellants once again argued that the record presented a pattern by which Sanchez's trial attorney claimed damages of $95,000 on each case filed over a period of time. Sanchez's trial attorney argued that petitions with claims falling within jurisdictional limits of the statutory county court proved nothing about whether he engaged in bad faith unless appellants presented proof that he amended these petitions due to the passage of time on a regular basis. Sanchez's trial attorney said the petition was amended in this case because Sanchez suffered extremely

increasing pain. While a pattern of claims alleging injury of $95,000 may raise some suspicion, there is nothing on the face of Sanchez's petitions nor any evidence in the record proving the amount in controversy was alleged in bad faith; therefore, the averments in Sanchez's petition control.

### B. Prejudgment Interest

■ In the alternative, appellants allege the trial court did not have subject matter jurisdiction over this case even if Sanchez's arbitrary $95,000 was proper because Sanchez also sought prejudgment interest, which is a form of damages. Appellants contend prejudgment interest has a calculable value at the time the suit is filed and, in this case, the value of the prejudgment interest in addition to the actual damages exceeds the jurisdiction of the statutory county court.

■ Interest encompasses two distinct forms of compensation: interest as interest or *eo nomine* and interest as damages. *See Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549, 551–52 (Tex.1985). Eo nomine interest is compensation allowed by law or fixed by the parties for the use or detention of money. *See id.* at 552. "Interest as damages is compensation allowed by law as additional damages for lost use of the money due as damages during the lapse of time between the accrual of the claim and the date of judgment." *Id.* Prejudgment interest is the latter. *See Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 528 (Tex.1998). However, if provided for by contract or statute, prejudgment interest is allowed eo nominee under that name. *See Phillips Petroleum Co. v. Stahl Petroleum Co.*, 569 S.W.2d 480, 482 (Tex.1978).

■ When interest is sought eo nomine, it is not taken into account in determining the jurisdiction of the court; but when interest is sought as an element of damages, the contrary is true. *See Binge v. Gulf Coast Orchards Co.*, 93 S.W.2d 813, 814 (Tex.Civ.App.-San Antonio 1936, writ dism'd). In this case, section 6 of former article 5069–1.05 of the revised civil statutes, in effect at the time of this suit, provided that a judgment in a personal injury suit must include prejudgment interest. *See* Act of May 8, 1967, 60th Leg., R.S., ch. 274, § 2, 1967 Tex. Gen. Laws 608, 610; TEX.REV.CIV. STAT. ANN. Art. 5069–1.05, § 6(a) (Vernon 1987) (current version at TEX. FIN.CODE ANN. § 304.102 (Vernon 1998)). Therefore, the prejudgment interest Sanchez sought is allowed eo nominee and is not taken in account in determining the jurisdiction of the court.

### C. Dismissal of Case

■ Finally, appellants argue that the statutory county court lacked jurisdiction over the case because the court inadvertently dismissed the case after it held a trial on the merits. Appellants contend the order dismissing the case without prejudice deprived the court of any jurisdiction other than to sign a judgment dismissing the suit, thus making the final judgment void. Appellants maintain the trial court abused its discretion in reinstating the case because Sanchez's motion to reinstate was improper. Appellants claim "Sanchez never provided any facts to explain why she did not appear as noticed to do on July 25, 1997." Appellants also contend because a dismissal for want of prosecution is the equivalent to a voluntary dismissal and a voluntary dismissal or non-suit divests the trial court of jurisdiction except to dismiss the case, the trial court lacked jurisdiction to reinstate Sanchez's case.

■ "A motion to reinstate a case dismissed for want of prosecution is addressed to the sound discretion of the trial court." *See Burton v. Hoffman*, 959 S.W.2d 351, 353 (Tex.App.-Austin 1998, no pet). Therefore, appellate review of the trial court's decision is limited to an abuse of discretion. *See Smith v. Babcock & Wilcox Constr. Co.*, 913 S.W.2d 467, 468 (Tex.1995). Reinstatement is allowable when a verified motion to reinstate is filed

within thirty days of the order, a hearing is held, and the trial court finds "the failure of the party or her attorney was not intentional or the result of conscious indifference but was due to an accident or mistake or that the failure has been otherwise reasonably explained." TEX.R. CIV. P. 165a3.

In this case, the trial court dismissed the suit on August 15, 1997, seven days after the jury returned a verdict in favor of Sanchez. The order of dismissal stated that the case was dismissed without prejudice because Sanchez failed to appear at the dismissal docket on July 25, 1997. Within thirty days after the trial court signed the dismissal order, Sanchez filed a verified motion to reinstate. At the hearing on the motion, the trial judge attributed the dismissal to a glitch in the trial court's computer software. The trial judge explained that the court did not have a dismissal docket; instead, it requires the case to be set for trial before a certain date or it will be dismissed. Noting that the motion met the technical requirements and the trial court accidently dismissed the case, the trial judge stated her intention to grant the motion. On September 30, 1997, the trial judge signed an order reinstating the case and the final judgment in favor of Sanchez.

From this record, we conclude the trial court did not abuse its discretion in reinstating the case. Because the record reflects that the statutory county court had jurisdiction over Sanchez's case, we overruled appellants' first point of error.

## II. VIOLATIONS OF MOTION IN LIMINE

 In their second point of error, appellants contend the trial court erred by overruling its motion for mistrial because Sanchez deliberately violated the trial court's ruling on a pretrial motion in limine. A motion in limine is a procedural device that permits a party to identify, before trial, certain evidentiary rulings that the court may be asked to make. *Fort Worth Hotel Ltd. Partnership v. En-* *serch Corp.,* 977 S.W.2d 746, 757 (Tex. App.—Fort Worth 1998, no pet). The purpose of a motion in limine is to prevent the other party from asking prejudicial questions and introducing prejudicial evidence in front of the jury without first asking the court's permission. *Id.* The cumulative effect of repeated violations of a trial court's order in limine may be grounds for reversal. *See National Union Fire Ins. Co. of Pittsburgh v. Kwiatkowski,* 915 S.W.2d 662, 664 (Tex.App.—Houston [14th Dist.] 1996, no writ). Where a trial court's order on a motion in limine is violated, an appellate court reviews the violations to see if they are curable by an instruction to the jury to disregard them. *See Dove v. Director, State Employees Workers' Compensation Div.,* 857 S.W.2d 577 (Tex.App.—Houston [1st Dist.] 1993, writ denied). Violations of an order on a motion in limine are incurable if the instructions to the jury would not eliminate the danger of prejudice. *Id.*

 Appellants claim they staked the credibility of their case on a medical record composed a year before Sanchez's accident in which Sanchez's cardiologist wrote that she had experienced pain in the back of her neck, shoulder and spine traveling down to her leg and that she had been going to a chiropractor for fifteen years. Sanchez's trial attorney produced no documents before trial to contradict this notation, but indicated during the offer of exhibits that there would be evidence to contradict it. Appellants secured a pretrial order on a motion in limine to preclude the use of or disclosure of the contents of any documents that were requested and not timely produced or supplemented before trial.

At trial, Sanchez's daughter testified that the last time her mother saw a chiropractor before this accident was in 1984 or 1985. Without approaching the bench, Sanchez's trial attorney asked the daughter if she had a letter from the chiropractor setting that forth, to which the daughter replied, "Yes, sir." Sanchez's

trial attorney queried, "Did I ask you to get that today?" Again the daughter replied affirmatively.

Weidner's trial attorney objected that the daughter was being asked to testify from a document not admitted into evidence or produced. The trial court, however, took a wait-and-see approach because there was no question pending about the letter. Sanchez's trial attorney then offered, "It's a letter from the chiropractor." At that point, Liberty Cab's trial counsel asked for the jury to be excused and moved for a mistrial.

Outside the jury's presence, appellants' counsel complained that the question about the letter violated the motion in limine. Although, the trial judge sustained the objection and agreed to instruct the jury to disregard, he indicated that he did not see the prejudicial effect of the question because the letter was not going to be admitted. Appellants' counsel argued that the contents of the letter were already in. On voir dire, Sanchez's daughter testified that she had knowledge independent of the letter about when her mother last saw a chiropractor. When the jury returned, the trial court instructed its members to disregard the last question and any portion of its answer.

Later in the trial, appellants' expert, neurologist Robert Gordon, testified to the medical records made by Sanchez's cardiologist, Dr. Antonetti. Gordon attested that the records showed that Sanchez told Antonetti "over a year before the accident that she had neck pain, shoulder pain, back pain that was causing a lot of symptoms and a lot of problems, that she had this for years, and that she had been going to a chiropractor for years and years, I think something like 15 years." On cross-examination, Sanchez's trial counsel questioned whether Gordon had a conversation with appellants' trial counsel about the testimony of Sanchez's daughter, in which she said Sanchez had not seen a chiropractor over the last ten years. Gordon responded that he understood that she had been

vaguely questioned about the matter to which Sanchez's trial attorney said, "As a matter of fact, her daughter came down here with a letter from a chiropractor." Gordon responded that he knew nothing about it. Weidner's attorney approached the bench and the jury was taken out of the courtroom.

Liberty Cab's trial counsel moved for mistrial on the ground that Sanchez's trial counsel deliberately interjected the chiropractor's letter before the jury in violation of the trial court's previous admonishment. The trial court acknowledged that it had a serious problem with Sanchez's trial counsel mentioning a letter without approaching the bench and threatened to sanction him if he mentioned the letter again. Sanchez's trial counsel expressed concern that Gordon was relying on the letter, which had been ruled inadmissible. Gordon indicated that he had not seen or heard about the letter. The jury was brought back to the courtroom and the trial court instructed the jury to disregard any reference to the letter.

Appellants claim these violations of the motion in limine "significantly violated the judicial process and fundamentally prejudiced and damaged" their case. Appellants contend Sanchez's trial attorney deliberately committed numerous incurable violations of the motion in limine by orchestrating the entire use of the inadmissible letter and capping his entire orchestrated strategy by criticizing them in closing argument for relying upon the Antonetti note. The record does not support appellants' claims.

■ First, appellants did not make a timely objection to Sanchez's first violation of the motion in limine, thus evidence suggesting the content of the letter subject to the motion was admitted. An objection is timely if made immediately after the statement is made or the error is waived. *See Fort Worth Hotel Ltd. Partnership*, 977 S.W.2d at 756. By the time Weidner's trial counsel objected that Sanchez's

daughter was being asked to testify from a document not admitted into evidence or produced, the jury had already heard, without objection, that Sanchez had not seen a chiropractor for approximately ten years and that Sanchez's daughter had a letter from a chiropractor that supported her testimony.

Second, the trial court acted decisively in admonishing Sanchez's trial counsel on his violations of the motions in limine and in instructing the jury to disregard the evidence. *See Kendrix v. Southern Pacific Transp. Co.*, 907 S.W.2d 111, 114 (Tex. App.—Beaumont 1995, writ denied). Most notably, after the second violation of the motion in limine, the trial court threatened to sanction Sanchez's trial counsel if he violated the motion again. Such an act is within the trial court's discretion in lieu of declaring a mistrial. *See Lassiter v. Shavor*, 824 S.W.2d 667, 669 (Tex.App.—Dallas 1992, no writ). Sanchez's trial counsel made no further mention of the letter. Following this admonishment, the trial court instructed the jury to "base your decision only on the evidence that's admitted in this case . . . [and] please disregard any reference to this letter that was just referred to and make no reference to it whatsoever in your deliberations."

▮▮▮ Third, evidence about Sanchez's treatment or lack of treatment by a chiropractor was relevant to whether Sanchez's complaints were related to injuries she incurred in the accident and to impeach Gordon's testimony. *See* TEX.R. EVID. 401. The probative value of such evidence was not outweighed by the danger of unfair prejudice, even though mention of the letter violated the motion in limine. R. 403. Unfair prejudice is " 'an undue tendency to suggest [a] decision on an improper basis, commonly, though not necessarily, an emotional one.' " *Fort Worth Hotel Ltd. Partnership*, 977 S.W.2d at 758 (quoting *Turner v. PV Int'l Corp.*, 765 S.W.2d 455, 471 (Tex.App.—Dallas 1988, writ denied per curiam, 778 S.W.2d 865 (Tex.1989)). Here, admissible evidence, independent of the

letter, indicated that Sanchez had not received chiropractic treatment for ten years before the accident. While reference to the letter and its contents may have added credibility to Sanchez's daughter's testimony, it most likely did not cause the jury to render a decision on an emotional or other improper basis. Any prejudice resulting from the mention of the letter was cured by the trial court's instruction to disregard. Accordingly, appellants second point of error is overruled.

### III. SUFFICIENCY OF THE EVIDENCE

In their third, fourth, fifth, and eighth points of error, appellants contend the trial court erred in denying various motions or in submitting certain issues to the jury because the evidence was legally and factually insufficient to support the ruling or the submission of the issue to the jury. We consider these points of error under the following standard of review:

In reviewing a "no evidence" or legal insufficiency point, we consider only the evidence and inferences which tend to support the contested issue and disregard all evidence and inferences to the contrary. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997), *cert. denied*, 523 U.S. 1119, 118 S.Ct. 1799, 140 L.Ed.2d 939 (1998). We will sustain a no evidence point when (1) the record reflects a complete absence of evidence of a vital fact; (2) the rules of law or evidence bar us from giving weight to the only evidence offered to prove a vital fact; (3) evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. *Id.* "More than a scintilla of evidence exits when the evidence supporting the finding, as a whole, 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.' " *Id.* (quoting *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex.1994).

To resolve a question of factual sufficiency, we examine all the evidence, not just the evidence that supports the verdict.

*See Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986) (per curiam). We will set aside the verdict only if is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.*

## A. Present Damages

In their third point of error, appellants argue the trial court erred in denying their motion for a directed verdict, in granting final judgment, and denying their post-verdict motions to vacate and set aside the final judgment, for judgment not withstanding the verdict, and for a new trial because there is no evidence or insufficient evidence to support the jury's findings to an erroneously submitted question regarding damages.

### 1. Damages for Reasonable and Necessary Medical Costs

■ Appellants contend the trial court erred in denying its motion for directed verdict because Sanchez failed to meet her burden of proof on damages other than reasonable and necessary medical costs. We review the denial of a motion for a directed verdict by a legal sufficiency or no evidence standard of review. *McFarland v. Sanders,* 932 S.W.2d 640, 643 (Tex. App.—Tyler 1996, no writ).

Appellants contend the record establishes that there were potential multiple causes for Sanchez's alleged injuries but Sanchez presented no evidence segregating from other causes the physical impairment she suffered as a result of the accident. They further contend she failed to present evidence that indicated the extent to which the accident aggravated her arthritis; therefore, the jury was left to speculate about the damages she suffered.

■ At trial, appellants moved for a directed verdict on the ground that Sanchez failed to meet her burden on the submission of her damages for reasonable and necessary medical expenses because she failed to segregate preexisting conditions unrelated to the accident from those conditions related to the accident. A plaintiff may recover only for reasonable and necessary medical expenses specifically shown to result from treatment made necessary by the negligent acts or omissions of the defendant, where such a differentiation is possible. *See Texarkana Memorial Hosp., Inc. v. Murdock,* 946 S.W.2d 836, 840 (Tex.1997).

■ Through Dr. Avila, Sanchez presented evidence that she incurred medical expenses for services rendered by Parkway Hospital, the emergency room doctor, and Dr. Avila in the amount of $6,185.50. Appellants, nevertheless, contend that Avila's testimony is no evidence because his assumptions, methodologies, and underlying data do not meet the scientific reliability standard for admission of such evidence as enunciated in *Havner,* 953 S.W.2d at 711–12, 714. Appellants, however, failed to preserve error on this argument. "To preserve a complaint that scientific evidence is unreliable and thus, no evidence, a party must object to the evidence before trial or when the evidence is offered." *Maritime Overseas Corp. v. Ellis,* 971 S.W.2d 402, 409 (Tex.), *cert. denied,* 525 U.S. 1017, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998). Despite what appellants allege in their reply brief, the record does not reflect that Weidner or Liberty Cab voiced a *Havner* objection to Avila's testimony before trial, when the evidence was offered, or before the close of evidence.

Although Sanchez presented evidence of past medical expenses in the amount of $6,185.50, the jury awarded Sanchez $10,-000 in past medical expenses. In its order denying appellants' post-verdict motions, the trial court reduced the award and ordered a remittitur of $4000. Appellants complain that the amount of the remittitur contradicts Sanchez's claimed medical costs of $6,185.50.

■ Appellants, however, invited error by moving for a remittitur based on the jury's award of past medical expenses in their motion for new trial. For that rea-

son, they are not entitled to relief on appeal. *See Austin Transp. Study Policy Advisory Committee v. Sierra Club*, 843 S.W.2d 683, 689 (Tex.App.—Austin 1992, writ denied).

The trial court did not err in denying appellants' motion for directed verdict or their post-verdict motions regarding reasonable and necessary medical expenses.

### 2. Damages for Pain and Suffering

▪ Appellants also moved for a directed verdict on the ground that Sanchez failed to provide an evidentiary foundation to support a jury award for damages for her pain and suffering as required by *Saenz v. Fidelity and Guaranty Insurance Underwriters*, 925 S.W.2d 607 (Tex. 1996) and failed to segregate pain and suffering suffered as a result of the accident from that she experienced before the accident. On appeal, appellants contend Sanchez is "only entitled to recover pain, suffering, anguish and physical impairment damages of a proven nature, duration and severity which caused a substantial disruption to Sanchez's daily life as a result of an injury proximately caused by the accident," under *Saenz* and *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex.1995). They also maintain that recovery for pain, suffering, and anguish damages and recovery for physical impairment damages require the same proof and that under *Texarkana Memorial Hosp., Inc. v. Murdock*, Sanchez cannot recover for both types of damages without "segregating the nature, duration and severity of the claimed pain, suffering and anguish from the nature, duration and severity of the claimed physical impairment or else Sanchez could receive a double recovery for the same damages." Because appellants did not move for a directed verdict on the same proof

and double recovery grounds they allege on appeal, we need not determine whether the trial court erred in denying appellants' motion for a directed verdict on those grounds.[1]

▪ Texas authorizes mental anguish damages as an element of recoverable damages in virtually all personal injury actions where the defendant's conduct causes serious bodily injury. *See City of Tyler v. Likes*, 962 S.W.2d 489, 495 (Tex. 1997). " 'Where serious bodily injury is inflicted, . . . we know that some degree of physical and mental suffering is the necessary result.' " *Id.* (quoting *Brown v. Sullivan*, 71 Tex. 470, 10 S.W. 288, 290 (1888)). Because an exact evaluation of mental anguish is impossible, juries must be given discretion in finding mental anguish damages that would fairly and reasonably compensate the plaintiff for her loss. *Saenz*, 925 S.W.2d at 614. "Compensation can only be for mental anguish that causes 'substantial disruption in . . . daily routine' or 'a high degree of mental pain and distress.' " *Id.*

The record reflects sufficient evidence that Sanchez suffered compensable mental anguish damages from pain resulting from the injuries she sustained in the accident apart from the pain she suffered from other ailments. Sanchez and her daughter testified that Sanchez could not engage in many activities she previously enjoyed, such as working with plants, crocheting, or attending church services, and that she was less mobile after the accident because of pain in her back and legs. Sanchez testified that before the accident she treated any back pain with an over-the-counter drug, but after the accident, such medication did not ease the pain. Sanchez acknowledged that Avila's treatments re-

---

1. "Texas appellate courts have shown extreme caution in reviewing claims for physical impairment because of their concern that a trial court may award a plaintiff an impermissible double recovery." *Rosenboom Mach. Tool, Inc. v. Machala*, 995 S.W.2d 817, 825 (Tex.App.—Houston [1st Dist.] 1999, pet.

denied). An instruction like the one submitted to the jury in this case in question six is sufficient to prevent the jury from considering physical impairment in making its award for other elements of damages. *See id.; see* discussion on jury question six, *infra.*

lieved her neck pain but she testified that she still suffered intense back pain. Avila attested that the injury Sanchez sustained in the accident would continue to cause her pain given the state of her arthritic back and her age. Because such testimony is sufficient to justify an award of mental anguish damages, the trial court did not err in denying appellants' motion for directed verdict on such ground.

### 3. Objections to Jury Question on Damages

■■■ Appellants raise two arguments on appeal about the submission of jury question six on damages.[2] First, appellants argue that jury question six was not in a substantially correct form. Second, appellants contend because jury question six did not ask the jury to find proximate cause of the occurrence in question that was proximately caused by Weidner's negligence, Sanchez did not meet her burden of proof, thus the jury awarded her damages that she was not legally entitled to recover.

Appellants contend the form of jury question six is defective because it did not (1) ask the jury to find what sum of money would compensate Sanchez for damages proximately caused by the aggravation of the preexisting arthritis, if any, proximately caused by the accident; (2) instruct the jury not to award any amount for any pain, suffering, anguish or physical impairment Sanchez suffered as a result of any preexisting condition or as a result of a condition arising after the accident, but not proximately caused by the accident; (3) instruct the jury that the jury could not simply fill in a number for pain, suffering, anguish and physical impairment damages; and (4) track the sole inquiry required under the *Murdock–Woodruff–Saenz* burden of proof. Appellants also complain that the instructions defined "injury" broader than the injury claimed by Sanchez. They claim the definition "*disjunctively* defined injury to include aggravation injuries and non-aggravation injuries;" consequently, the instruction allowed the jury to find damages for non-aggravation injuries.

■■■ Appellants, however, did not preserve error on any of these objections. A party cannot enlarge on appeal an objection made in the trial court. *Operation Rescue–National v. Planned Parenthood of Houston and Southeast Texas, Inc.,* 937 S.W.2d 60, 70 (Tex.App.—Houston [14th Dist.] 1996), *aff'd as modified,* 975 S.W.2d 546 (Tex.1998). An objection on appeal that is not the same as that urged at trial

---

**2.** The trial court submitted jury question six in the following form:

> What sum of money, if paid now in case, would fairly and reasonably compensate Matilde Sanchez for her injuries, if any, which you find from a preponderance of the evidence she received on the occasion in question.
>
> Consider the elements of damages listed below and none other. Consider each element separately. Do not include damages for one element in any other element. Do not include interest on any amount of damages you find.
>
> Answer in dollars and cents for damages, if any, that—

| | Were sustained in the past | In reasonable probability will be sustained in the future |
|---|---|---|
| Physical pain and mental anguish | $_____ | $_____ |
| Physical Impairment | $_____ | $_____ |
| Medical Care | $_____ | |

> Do not reduce the amount in your answer because of the Michele Leal's negligence, if any.
>
> "Injury" means damage or harm to the physical structure of the body and such disease or infection as naturally result therefrom, or the incitement, acceleration, or aggravation of any disease, infirmity, or condition, previously or subsequently existing, by reason of such damage or harm.

presents nothing for review. *See Religious of Sacred Heart of Texas v. City of Houston,* 836 S.W.2d 606, 614 (Tex.1992).

At trial, Liberty Cab objected to question six on the ground that there were no pleadings to support the submission of the question and the evidence was legally and factually insufficient to support the individual components of various damages that Sanchez sought to recover. The trial court asked Liberty Cab, "You're saying there is no evidence to support medical care in the past?" Liberty Cab's trial counsel responded, "I'm making an objection." Liberty Cab also objected to the submission of the definition of "injury" because "we believe that's something within the jury's common knowledge and any instruction tends to move the jury one way or another and is unnecessary for the jury's deliberation." Weidner joined Liberty Cab's objection.

Weidner further objected to the submission of the definition of "injury" because the definition did "not provide the jury with a sufficient basis so they can actually deliberate on the plaintiff's actual burden of proof; and that is to segregate the damages that were caused, reasonably caused by the accident versus those that were caused—were preexisting or not caused by the accident." Liberty Cab did not join in the objection.

▪ Because appellants' complaints on appeal about the form of jury question six do not comport with those raised at trial, they preserved nothing for review.[3]

### 4. Causation

▪ Appellants argue even if question six was properly framed, the jury's answer to question six did not establish that the accident that Weidner proximately caused was the proximate cause of Sanchez's injuries. Appellants concede Sanchez secured a finding in the jury's answer to question one that Weidner's negligence was the proximate cause of the "occurrence in question." Nevertheless, they argue Sanchez did not meet her burden of proof because she did not submit a question asking the jury to find the sum of money to compensate her for her injuries "proximately caused by the 'occurrence in question' proximately caused by Weidner's negligence." They complain that question six does not ask the jury to find proximate cause, it does not reference the phrase "occurrence in question" found in question 1, and it contains no predicate to incorporate the jury's findings in question 1 or the "occurrence in question." Instead, appellants argue, "Question No. 6 referenced the 'occasion in question' without asking the jury whose conduct on the 'occasion in question' proximately cause [sic] any injuries Sanchez received on the 'occasion in question.'" Moreover, they complain, the charge did not define "occasion in question," therefore, the jury could have de-

---

Mental anguish means a high degree of mental pain or distress that is more than mere worry, anxiety, pain, vexation, embarrassment or anger and which causes a substantial disruption of a person's daily routine.

3. Even if Weidner's objection was sufficient to preserve error regarding the definition of injury, the submission of the definition did not amount to reversible error. A trial court has broad discretion in submitting jury instructions. *See Plainsman Trading Co. v. Crews,* 898 S.W.2d 786, 791 (Tex.1995). For an instruction to be proper, it must assist the jury, accurately state the law, and find support in the pleadings and the evidence. Tex.R. Civ. P. 277. An instruction that misstates the law or misleads the jury is improper. *Owens–Corning Fiberglas Corp. v. Martin,* 942 S.W.2d 712, 721–22 (Tex.App.-Dallas 1997, no writ).

The definition of injury, in this case, tracks, in part, the definition of "injury" found in section 401.001 of the Texas Labor Code. *See* Tex. Lab.Code Ann. § 401.011(26) (Vernon 1996) (defining injury as "damage or harm to the physical structure of the body and a disease or infection naturally resulting from the damage or harm"). The second clause of the definition has been used in worker's compensation cases to inform the jury that an injury may include the aggravation of a preexisting condition. *Texas Emp. Ins. Ass'n v. Critz,* 604 S.W.2d 479, 483–84 (Tex.Civ.App.-Texarkana 1980, writ ref'd n.r.e.). Although not generally included in a jury charge in a personal injury case based on principles of common-law negligence, the definition correctly states the law and addresses issues specifically raised by the pleadings and evidence before the jury. Accordingly, the trial court did not err in submitting this definition to the jury.

fined the occasion in question to include the entire day, the accident, all of Sanchez's interactions with Weidner including later trips, or the entire accident and post-accident medical history of Sanchez regardless of etiology. For this reason, appellants contend the jury's answer awards Sanchez damages that she is not legally entitled to recover.

Appellants, however, voiced no objection to the omission of a question regarding the causal link between the "occurrence in question" and Sanchez's injuries and made no request for the submission of the causation element. Furthermore, they voiced no objection to question 6 on that ground. Therefore, they waive error and the causation element is deemed found in Sanchez's favor. See Tex.R. Civ. P. 279.

Notwithstanding the deemed finding, appellants implicitly challenge the sufficiency of the evidence to establish the causal link between the accident and the medical expenses Sanchez incurred because, they argue, there was evidence that other preexisting conditions could have been the reason for some of the treatment.

To establish causation in a personal injury case, a plaintiff must prove the conduct of the defendant caused an event and that event caused the plaintiff to suffer compensable damages. See Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex.1995). The causal link between the event sued upon and the plaintiff's injuries must be shown by competent evidence. Morgan v. Compugraphic Corp., 675 S.W.2d 729, 731 (Tex.1984). A jury may decide the required causal nexus between the event sued upon and the plaintiff's injuries when (1) general experience and common sense will enable a layperson fairly to determine the causal nexus; (2) expert testimony establishes a traceable chain of causation from injuries back to the event; or (3) a probable cause nexus is shown by expert testimony. Blankenship v. Mirick, 984 S.W.2d 771,

775 (Tex.App.—Waco 1999, pet. denied). A reviewing court, however, is not limited to only one of these categories to the exclusion of others when evaluating the sufficiency of the evidence. Id. In this case, both lay and expert testimony provided competent evidence of the causal link.

By video deposition, Sanchez testified as follows: On the day of the accident Sanchez's regular doctor told her that she did not need to see him for six months because she was improving. After the collision, Sanchez got out of the cab and dragged herself to her home two blocks away even though her back and neck were hurting a lot. She called her daughter to take her to the emergency room, where she was examined and x-rayed. She returned home even though she felt "like a chicken that had the head wring a neck." A few days later she saw Dr. Avila, an orthopedic surgeon.

Sanchez attested that Avila's treatments helped but she continued to have back pain after the treatments were terminated. To help with the pain, a home health provider would rub her back with ointment and give her pain killers. Sanchez said the prescription pain killers have been taken away.

Sanchez further attested that neither her back nor her neck was bothering her before the accident. She admitted that she had arthritis before the accident but testified that she never needed anything more than Advil to relieve the pain. Now, she testified, Advil is not enough to relieve the pain. She continues to experience back and leg pain.

Dr. Avila testified that the "[i]mpact of the accident jerked [Sanchez], causing her to hit the person seated next to her and to hit her mouth on the head of the other person. Then she hit the back of the front seat, causing her to hit her stomach." Avila attested that Sanchez complained of pain in her back, in her neck adjacent to both shoulders, and in her mid and lower back. The neck pain was accompanied by

numbness and weakness. Avila suspected the injuries Sanchez suffered aggravated a preexisting arthritic condition. His suspicions were confirmed after reading the emergency room x-rays and conducting an objective physical examination. After detailing the medical evidence he acquired as a result of his examination, Avila concluded that Sanchez suffered an acute back and neck sprain from the accident, which aggravated a preexisting arthritic condition. Avila recommended that Sanchez undergo physical therapy, wear a neck brace, and continue to take medication prescribed by emergency room doctors. Avila treated Sanchez for approximately six months.

Avila further testified that Sanchez's neck pain resolved after some time, but that she still suffered from lower back pain. Avila noted that Sanchez complained of swelling in her left ankle and foot, pain in her right ankle and foot, and a weak grip in her right hand. She also complained about pain in her lower back which radiated into her right leg. Avila could not directly attribute those conditions to the accident but attributed the pain to Sanchez's age and her preexisting arthritic condition, which was aggravated by the accident. Avila attested because of Sanchez's age and condition, he thought her injury was permanent and that she would continue to suffer pain as a result of the injuries incurred from the accident.

Sanchez's and Avila's testimony provides a strong and logically traceable connection between the accident and Sanchez's injuries. Although Sanchez suffered many other ailments, some of which may have caused her to experience neck and back pain, there is no evidence that she sought treatment from Parkway Hospital, the emergency room doctor, or Dr. Avila for any ailment other than the injury she sustained as a result of the accident.

The evidence is also factually sufficient to support a causal link between the accident and Sanchez's injuries. Appellants presented evidence controverting Sanchez

and Avila's testimony through their expert, neurologist Robert Gordon. Gordon testified that he had reviewed Sanchez's medical records, her deposition, and Avila's deposition. Based on these records Gordon testified that he would diagnose Sanchez as having a cervical and lumbar strain and not an injury to her thoracic spine. He attested that Dr. Antonetti's records indicated that Sanchez told Antonetti that she had neck, shoulder and back pain for years and that she had gone to a chiropractor for fifteen years. Gordon found no evidence that Sanchez's arthritic condition was aggravated as a result of the accident and no evidence that her injuries would be permanent. Gordon attested that Sanchez had experienced many other serious medical problems which could contribute to her aches and pains.

Gordon also attested that he thought Avila had provided excellent medical treatment to Sanchez but Avila's medical conclusions about Sanchez's injuries were not objectively based because Avila was emotionally involved with Sanchez as her treating physician. Gordon had not spoken with any of Sanchez's doctors about the substance of the case.

Although Gordon's testimony controverts Sanchez's evidence, it is not so overwhelming as to render the jury's verdict clearly wrong and unjust. Therefore, we find the evidence factually sufficient to support jury's finding of causation.

### 5. Sufficiency of Evidence to Support Damages Award

Finally, appellants complain that the trial court erred in granting final judgment, in denying their post-verdict motion to vacate and set aside the final judgment, their motion for judgment N.O.V. and motion for new trial because the evidence is legally and factually insufficient to support the damages awarded in the judgment. We find the evidence to be sufficient to support the judgment. Accordingly, we overrule appellants' third point of error.

### B. Future Damages

In point of error eight, appellants contend the trial court erred in awarding future damages and pre-judgment interest on those damages in the final judgment. Appellants contend that Sanchez produced no evidence to support the actual calculation of her claimed future pain, suffering, anguish and impairment injuries discounted to present value; consequently, the jury created its own formula. Appellants further contend this error is compounded by the fact that Sanchez is now dead, "yet the jury awarded her for damages which she never will or could suffer."

Appellants cite no authority for their contention that Sanchez's failure to produce an expert to testify to the present value of her future damages amounts to no evidence of future damages. Case law, however, holds that the measure of damages in a personal injury case is not subject to precise mathematical calculation. *Duron v. Merritt*, 846 S.W.2d 23, 26 (Tex.App.—Corpus Christi 1992, no writ). Each case must be measured by its own facts, and considerable discretion and latitude given to the jury. *Id.* "The jury's province is to resolve the speculative matters of pain and suffering, future pain and suffering, future disfigurement, and future physical impairment, and set the amount of damages attributable thereto." *Id.; see also J. Wigglesworth Co. v. Peeples*, 985 S.W.2d 659, 665 (Tex.App.—Fort Worth 1999, pet. denied). As long sufficient probative evidence exists to support the jury's verdict, this court will not substitute its judgment for that of the jury. *J. Wigglesworth Co.*, 985 S.W.2d at 665.

The record, in this case, reflects more than a scintilla of probative evidence of the nature of Sanchez's injuries, the pain she has experienced and continues to experience, and her physical limitations. The record also reflects evidence of Sanchez's state of health at the time of trial, her age, and her marital, family, and employment history. In addition, Dr. Avila's testimony that Sanchez's injuries were permanent and that she would continue to experience pain and impairment from the injuries given her age and physical condition constitutes sufficient evidence to support the jury's award of future damages.

Appellants also urge this court, without citing authority, to reverse established precedent set in *C & H Nationwide, Inc. v. Thompson*, 903 S.W.2d 315, 327 (Tex. 1994), which authorized an award of pre-judgment interest on future damages. Appellants maintain an award of prejudgment interest on future damages "yields a double recovery because future damages discounted to present value already has a component of prejudgment interest, and is irrational and unconstitutional under the due process, excessive fines, equal protection, open courts and related clauses."

We decline to address appellants' argument for several reasons. First, appellants did not object at trial to the award of pre-judgment interest on future damages and did not adequately brief this argument on appeal. Second, the supreme court addressed many of appellants' concerns in *C & H Nationwide, Inc.* Accordingly, we overrule point of error eight.

### C. Weidner's Employment Status

In their fourth point of error, appellants contend the trial court erred in denying Liberty's motion for a directed verdict motion, in granting final judgment in favor of Sanchez, and denying their post-verdict motions to vacate and set aside the final judgment, for judgment notwithstanding the verdict, and for a new trial because there is no evidence or insufficient evidence to support the jury's findings to an erroneously submitted question regarding Weidner's employment status. Specifically, appellants challenge the trial court's rulings because (1) Sanchez failed to negate the preclusive effect of appellants' written contract creating an independent contractor relationship; (2) question three and its accompanying instructions regarding Weidner's employ-

ment status were submitted in substantially incorrect form; and (3) the evidence is legally and factually insufficient to support a finding that Weidner was an employee of Liberty Cab.

### 1. Modification of Contract

■ Appellants contend the trial court erred in denying Liberty Cab's motion for a directed verdict because Sanchez did not negate the legally preclusive effect of a written contract between Liberty Cab and Weidner, which established an independent contractor relationship. In her amended original petition, Sanchez alleged that Liberty Cab was liable for Weidner's negligence under three theories of recovery: negligent entrustment, joint enterprise, and respondeat superior. At the close of Sanchez's case-in-chief, the trial court granted a directed verdict in favor of Liberty Cab on the theories of negligent entrustment and joint enterprise, but denied Liberty Cab's motion on respondeat superior. Appellants reurged the motion for directed verdict on the respondeat superior issue at the close of evidence and in a motion for new trial.[4] The trial court denied all motions and entered judgment holding Liberty Cab and Weidner jointly and severally liable for Sanchez's damages.

■ A directed verdict is proper when the evidence conclusively proves a fact that establishes a party's right to judgment as a matter of law and there is no evidence to the contrary. *Cliffs Drilling Co. v. Burrows*, 930 S.W.2d 709, 712 (Tex.App.—Houston [1st Dist.] 1996, no writ). We review the denial of a directed verdict by a legal sufficiency or "no evidence" standard of review. *City of Alamo v. Casas*, 960

S.W.2d 240, 248 (Tex.App.—Corpus Christi 1997, pet. dism'd by agr.).

■ When reviewing a "no evidence" point of error, the reviewing court may consider only the evidence and inferences that support the challenged finding and should disregard all evidence and inferences to the contrary. *See ACS Inv., Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997). If there is more than a scintilla of evidence to support the finding, the claim is sufficient as a matter of law, and any challenges merely go the weight of the evidence. *See Browning–Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 928 (Tex.1993). There is some evidence when the proof supplies a reasonable basis upon which reasonable minds could reach different conclusions about the existence of a vital fact. *See Orozco v. Sander*, 824 S.W.2d 555, 556 (Tex.1992) (per curiam).[5]

■ The right to control the details of a person's work determines whether an employment or independent contractor relationship exists. *Farrell v. Greater Houston Transp. Co.*, 908 S.W.2d 1, 3 (Tex.App.—Houston [1st Dist.] 1995, writ denied). A written contract that expressly provides for an independent contract relationship is determinative of the parties' relationship in the absence of extrinsic evidence indicating the contract was subterfuge, that the hiring party exercised control in a manner inconsistent with the contract provisions, or if the written contract has been modified by subsequent agreement, either express or implied. *See Newspapers, Inc. v. Love*, 380 S.W.2d 582, 590 (Tex.1964); *see Humphreys v. Texas Power & Light Company*, 427 S.W.2d 324, 329 (Tex.Civ.App.—Dallas 1968, writ ref'd, n.r.e.). Further, the fact that a person is

---

4. Contrary to Sanchez's assertion, this court may review the denial of appellants' motion for a directed verdict on appeal. *See Thedford v. Missouri Pacific R. Co.*, 929 S.W.2d 39, 50–51 (Tex.App.—Corpus Christi 1996, writ denied).

5. Similarly, when reviewing a motion for an instructed verdict, we consider all of the evidence in a light most favorable to the non-

movant, disregard all evidence and inferences to the contrary, and give the nonmovant the benefit of all inferences arising from the evidence. *See Knoll v. Neblett*, 966 S.W.2d 622, 627 (Tex.App.-Houston [14th Dist.] 1998, pet. denied). If there is any conflicting evidence, an instructed verdict is improper and the issue must go to the jury. *See id.*

normally an independent contractor does not preclude a finding of agency as to the particular transaction at issue. *See Jim Stephenson Motor Co. v. Amundson,* 711 S.W.2d 665, 670–71 (Tex.App.-Dallas 1986, writ ref'd n.r.e.); *See Clark v. Texaco, Inc.,* 382 S.W.2d 953, 958 (Tex.Civ.App.-Dallas 1964, writ ref'd n.r.e.).

The initial relationship between Weidner and Liberty Cab was governed by two contracts, the Daily Pay Independent Contractor Agreement ("the Daily Pay Agreement") and the Daily Pay Lease Purchase Agreement ("the Lease Purchase Agreement"). The Daily Pay Agreement gave Weidner full managerial responsibility, management and operation of his business and recited that an independent contractor relationship existed between Weidner and Liberty Cab. For use of its name, medallion, and good will, Weidner paid Liberty Cab a daily fee. The Lease Purchase Agreement described the terms by which Weidner purchased his taxi cab. Under this agreement, Weidner was responsible for maintenance and repair of his vehicle and for purchasing insurance coverage against personal injury and property damage in conformity with the law.

When, as here, a contract establishes an independent contractor relationship and does not grant control over the details of the work to the principal, then evidence outside the contract must be produced to show that despite the contract terms, the true operating agreement vested the right of control in the principal. *See Farrell,* 908 S.W.2d at 3. Sporadic action directing the details of the work will not destroy the original contract forming the basis of the independent contractor relationship. *See Love,* 380 S.W.2d at 592. An occasional assertion of control should not destroy a settled independent contractor relationship agreed to by the parties. *Id.* at 589. The true test is the right of control; exercise of control is evidentiary only. *Id.* at 592. Otherwise, contract rights and relationships based thereon would be destroyed. *Id.* The assumption

of exercise of control must be so persistent and the acquiescence therein so pronounced as to raise an inference that when the accident occurred, the parties by implied consent had agreed that the principal might have the right to control the details of the work. *Id.*

Sanchez argued that a subsequent contract between Liberty Cab and the Metropolitan Transit Authority of Harris County ("the Metro Agreement"), modified the relationship between Weidner and Liberty Cab, giving Liberty Cab the right to control Weidner's tasks. On appeal, Sanchez argues the record reflects evidence that "[i]n complying with the terms of their contracted [sic] with the City of Houston, Liberty required all its cab drivers, including Weidner, to follow rules and guidelines far more strict that those in force for picking up (or not picking up) a random street fare."

While we recognize that the Daily Pay Agreement initially created an independent contractor relationship between Liberty and Weidner, we hold there was also ample evidence that (1) the Metro Agreement expressly modified the Daily Pay Agreement (and did so by written contract), and (2) Liberty actually exercised a degree of control over Weidner such that he was not an independent contractor in the transaction at issue. On the day Weidner drove the route dictated by Metro, he was given a manifest that detailed what he was to do for approximately the next twelve hours. When on this route, pursuant to the Metro Agreement, Liberty directed Weidner as follows:

1. Who to pick up;
2. When to pick them up;
3. Where to pick them up;
4. Where to take them;
5. The sequence or order of the pickups;
6. That he was required to (a) complete the route and (b) do so within a scheduled time;

7. The general type and manner of dress he was to wear;

8. He was to be paid by the hour ($12 per hour).

Further, pursuant to the Daily Pay Agreement, Weidner was required to report an accident directly to Liberty within 24 hours or face the possibility of Liberty terminating the that agreement. In addition to this detailed exercise and right of control over his entire work day, Liberty owned both the cab in question and the cab radio. Liberty also exercised and retained the right of control in what Weidner was *not* allowed to do, namely, he was prohibited from picking up any other fares while on the Metro route. Therefore, in this connection, he was restricted from conducting any of his own business because his time was totally and completely monopolized and controlled by Liberty's assigned tasks.[6] Liberty also had a right to assess a large fine against Weidner if he were to deviate from certain parts of the manifest (fines assessed whereby Weidner would, as he put it, "lose his lunch").

In short, precious little was left to Weidner's discretion on the day of the accident and when he drove the Metro route. During these long days, and the very day in which the accident occurred, Liberty quite rigidly dictated the "who," "what" "where," "when," as well as other material details of Weidner's work. Though the appellant points out that Weidner, not Liberty Cab, made decisions as to "how he drove, the way he drove, and the speed at which he drove" the jury should be permitted to infer that the numerous limitations on Weidner described above affected these factors as well. Finally, the draconian economic penalties Liberty threatened to assess against Weidner in the event he deviated from the manifest only served to intensify its explicit and implicit control over how Weidner did his work. On the day in question, and under the terms of the Metro Agreement, Weidner was virtually no more than a paid employee of Liberty with no material discretion. A salaried school bus driver probably has more discretion than Weidner.

There was overwhelming evidence adduced at trial that the Metro Agreement modified the relationship between Weidner and Liberty Cab such that while Weidner was engaged in the Metro Venture, Liberty contractually retained a right to control and actual control over the details of Weidner's work. We therefore find there was considerably more than a scintilla of evidence to support the jury's finding.

### 2. Jury Question and Instruction

Liberty next argues the question submitted by the court on Weidner's employment status was substantially incorrect and the court erred in refusing its proposed Question No. 3 and instructions. The jury question reads as follows:

#### QUESTION NO. 3

On the occasion in question was Gary Weidner acting as an employee of Liberty Cab Company, Inc.?

Answer "Yes" or "No".

Answer: *YES*

An "employee" is a person in the service of another with the understanding, express or implied, that such person has the right to direct the details of the work and not merely the results to be accomplished.

---

**6.** As a practical matter, the Metro Agreement not only modified but negated the Daily Pay Agreement in material areas. Under the latter, Weidner was free to drive almost anywhere in Houston picking up and dropping off fares at his discretion, when and where he chose. On the other hand, the detailed control described above under the Metro Agreement eliminated that discretion. In light of the rigidly structured manifest, it is apparent that eliminating Weidner's discretion to operate as he wished was the only way to secure the objectives sought under the Metro Agreement. The relationship between Weidner and Liberty was thus governed not merely by one contract but by three. The three contracts together with the reality of the relationship was harmonized by the jury finding.

A person is not acting as an employee if he is acting as an independent contractor. An "independent contractor" is a person who, in pursuit of an independent business, undertakes to do specific work for another person, using his own means and methods without submitting himself to the control of such other person with respect to the details of the work, and who represents the will of such other person only as a result of his work, and not as to the means by which it is accomplished.

A written contract expressly excluding any right of control over the details of the work is not conclusive if it was a subterfuge from the beginning or was persistently ignored or was modified by the subsequent express or implied agreement of the parties; otherwise such a written contract is conclusive.

■ We find the court submitted this question in substantially correct form. It tracked the applicable pattern jury charge question. Further, in accordance with current law, is adequately instructed the jury on the law of independent contractors and whether a pre-existing independent contractor relationship should be deemed conclusive. Appellant cites *Farrell v. Greater Houston Transportation Co.*, 908 S.W.2d 1, 3–4 (Tex.App.-Houston [1st Dist.] 1995, writ denied), as authority to support its suggested issue and instructions, but it is distinguishable from the instant case. In *Farrell* the plaintiff was a motorist in another car. A cab driver owes a higher degree of care to his passenger than another motorist. Also, the manifest system between the cab company and Metro in this case is different than in *Farrell.*

Appellant's fourth point of error is overruled.

### D. Third Party Negligence

■ In their fifth point of error, appellants challenge the sufficiency of the evidence to support the jury's finding that Michele Leal, the driver of the car that collided with Weidner's cab, was not negligent. Weidner, however, conceded at trial that his negligence caused the accident. He testified that he failed to stop at a stop sign and his cab collided with a car driven by Leal as he crossed the intersection. Although Weidner received a ticket for the offense, he complained that Leal was also negligent because she did not sound her horn, apply her brakes or take any evasive action to avoid the collision. Weidner, however, offered no evidence that Leal was negligent in failing to take any evasive measures. Because the record reflects no evidence that Leal's actions or omissions were negligent acts, the trial court did not err in granting judgment on the jury's finding. Appellants' fifth point of error is overruled.

### IV. Post-Trial Rulings

In their sixth point of error, appellants complain about various post-trial rulings. First, appellants contend the trial court abused its discretion in granting Sanchez leave to file a second amended original petition. Second, appellants contend the trial court erred in making findings of fact in a jury trial.

### A. Amended Pleading

■ A trial court has no discretion to refuse a post-verdict amendment of pleadings unless the opposing party presents evidence of surprise or prejudice, or the amendment asserts a new cause of action or defense and the opposing party objects to the amendment. *Greenhalgh v. Service Lloyds Ins. Co.*, 787 S.W.2d 938, 939 (Tex.1990); *Lege v. Jones*, 919 S.W.2d 870, 875 (Tex.App.—Houston [14th Dist.] 1996, no writ). An amended pleading that changes only the amount of damages sought does not automatically operate as surprise within the contemplation of Rule 63 of the Texas Rules of Civil Procedure, which concerns amendments to pleadings. *Lege*, 919 S.W.2d at 875. The party opposing the amendment must present evidence

to show the increase of damages resulted in surprise. *Id.*

■ In her first amended pleading Sanchez moved for leave to file a post-verdict petition to conform her pleadings to the jury's verdict, which awarded her more damages that she pleaded in her first amended original petition. Appellants argued that they were surprised by the jury's verdict because it awarded Sanchez more than she sought in pre-trial negotiations and more than she asked for at trial. Appellants contended that had they known the case was worth more than $210,000, they might have settled or made a different argument to the jury or called Michele Leal "to present more factual witness evidence about the accident itself." Appellants also argued raising the amount of damages was prejudicial because it increased their liability exposure from $210,000 to $275,000. The trial court heard appellants' objections and granted Sanchez leave to file a second amended original petition.

We find no abuse of discretion in the trial court's granting Sanchez's post-verdict amendment as to damages. Even though appellants argued prejudice and surprise at trial, they presented no evidence that an award of $275,000 resulted in prejudice or surprise. Instead, the record reflects that in her first amended original petition Sanchez sought a total of $360,000 in damages, $210,000 in actual damages, and $150,000 in punitive damages. Even though the jury awarded $60,000 more in actual damages that Sanchez sought, appellants cannot be surprised or prejudiced by this award given the total amount of damages that Sanchez sought in her first amended original petition.

### B. Findings of Fact

■ Appellants also complain the trial court erred in making findings of fact in a document entitled "Order of Post Verdict Findings." In these Findings, the trial court made conclusions of law about many matters raised on appeal including: (1) the

dismissal order erroneously entered by the court as a result of the computer glitch; (2) the granting of Sanchez's motion for leave to file a second amended petition; (3) the validity of Sanchez's original petition given the trial court's jurisdictional limitations; and (4) the sufficiency of the evidence to submit a question to the jury regarding Weidner's employment status. The trial court also noted that it would take "under advisement the issue of jurisdiction and the sufficiency of the evidence regarding the injuries sustained by the Plaintiff herein." Appellants contend the findings are not proper in a jury trial and in the alternative, that Sanchez did not properly request findings under rule 296 of the rules of procedure and the findings do not relate to the merits of the case.

The Texas Rules of Civil Procedure do not authorize a litigant to request, nor require a trial court to file, findings of fact or conclusions of law following a jury trial. *See* TEX.R. CIV. P. 296, 297. In this case, the findings are a compilation of the trial court's rulings on various motions raised before and during the trial and not findings on issues submitted to the jury. Although the findings were unauthorized and unnecessary for appellate review, the filing of such findings does not constitute reversible error in this case. *See* TEX.R.APP. P. 44.1. Appellants sixth point of error is overruled.

### V. CUMULATIVE ERROR

■ In their seventh point of error, appellants contend the trial court erred in granting final judgment because the jury's verdict and the final judgment are the product of cumulative error. Multiple errors, even if considered harmless taken separately, may result in reversal and remand for a new trial if the cumulative effect of such errors is harmful. *Fibreboard Corp. v. Pool*, 813 S.W.2d 658, 695 (Tex.App.—Texarkana 1991, writ denied). Before we may reverse a judgment and order a new trial, we must determine that the error committed by the trial court was

**378**

reasonably calculated to cause and probably did cause the rendition of an improper judgment. *Id.* at 695–96; TEX.R.APP. P. 44.1(a). Appellants must show that, based on the record as a whole, but for the alleged errors, the jury would have rendered a verdict favorable to it. *See Pool,* 813 S.W.2d at 695.

Appellants, however, fail to meet their burden under *Pool.* Although appellants allege that "fundamental errors, discussed *supra,* require the Court to reverse the Final Judgment," they do not specify which errors are fundamental. We have considered all of appellants' allegations of error and find that these errors do not constitute cumulative error. Accordingly, we overrule appellants' seventh point of error.

## VI. CONCLUSION

We affirm the judgment of the court below.