NO. 12-02-00234-CV



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


THE STATE OF TEXAS
§
 APPEAL FROM THE 


FOR THE BEST INTEREST
§
 COUNTY COURT AT LAW


AND PROTECTION OF L.W.
§
 CHEROKEE COUNTY, TEXAS

 

MEMORANDUM OPINION


 Appellant L.W. appeals from an order of commitment for temporary inpatient mental health

services. After a hearing without a jury, the trial court ordered L.W. committed to Rusk State
Hospital for a period not to exceed ninety days. In six issues, L.W. asserts the evidence is legally
and factually insufficient to support the order of commitment, the trial court erred in admitting
evidence, and the trial court erred in rendering judgment that is void as a matter of law. We affirm. 


Background

 On July 29, 2002, an application for court-ordered temporary mental health services was filed
requesting the court commit L.W. to Rusk State Hospital for a period not to exceed ninety days. The
application was supported by a certificate of medical examination for mental illness, prepared by a
physician, Dr. Charles Plyler, who had examined L.W. on July 26. Dr. Plyler diagnosed L.W. as
suffering from psychosis, NOS. He found that L.W. is mentally ill, likely to cause serious harm to
herself, and is suffering severe and abnormal mental, emotional or physical distress, is experiencing
substantial mental or physical deterioration of her ability to function independently, and is unable
to make a rational and informed decision as to whether to submit to treatment. Dr. Plyler reached
these conclusions because, on July 26, L.W. was confused and disoriented and wandered away from
her home, which is by a big highway. Dr. Plyler found that L.W. presents a substantial risk of
serious harm to herself or others if not immediately restrained, an opinion he based on L.W.'s
behavior and on evidence of severe emotional distress and deterioration in L.W.'s mental condition
to the extent that she cannot remain at liberty. Dr. Plyler indicated that, on the date he examined
L.W., she had wandered away from home in a confused state.

 On July 31, 2002, L.W. was examined by Dr. Zak Moin who then also prepared a certificate
of medical examination for mental illness. Dr. Moin diagnosed L.W. with schizoaffective disorder,
bipolar type, and indicated that L.W. is mentally ill and likely to cause serious harm to herself. He
further determined that she is suffering severe and abnormal mental, emotional or physical distress,
is experiencing substantial mental or physical deterioration of her ability to function independently,
which is exhibited by her inability to provide for her basic needs, and she is unable to make a rational
and informed decision as to whether or not to submit to treatment. He came to these conclusions
because L.W. exhibited loose, tangential, and disorganized thinking. Further, she was confused, 
grandiose, and delusional. 

 Dr. Moin testified at the hearing, first restating his diagnosis that L.W. is suffering from
schizoaffective disorder, bipolar type. He determined that L.W. is mentally ill and likely to cause
harm to herself, and is suffering severe and abnormal mental, emotional, or physical distress, is
experiencing substantial mental or physical deterioration of her ability to function independently,
which is exhibited by her inability to provide for her basic needs, and is unable to make a rational,
informed decision as to whether or not to submit to treatment. He based this determination on his
examination of L.W., review of medical records, and on reasonable medical probabilities. Dr. Moin
explained that L.W. was recently discharged and readmitted within about a week. He described L.W.
as very confused and disorganized, very agitated, lacking insight into her illness, grandiose, and
delusional. Since her admission to the hospital, she has required medication on an emergency basis. 
He explained that her most recent episode of disorganized thinking and grandiose delusional
behavior evidences a continuing pattern of behavior that tends to confirm her distress and the
deterioration of her ability to function. During his interview with her, she was so disorganized she
could not focus and she rambled from one topic to another. The doctor stated that Rusk State
Hospital is the least restrictive available option for L.W. at this time.

 On cross-examination, Dr. Moin stated that L.W.'s condition has not improved since coming
to Rusk State Hospital. He further explained that, with prompting, L.W. can dress herself and take
care of her personal hygiene without assistance, and she can feed herself without prompting or
assistance. Also, she can initiate and respond to conversation, albeit inappropriately. The doctor
explained that she is currently on medication that she consented to take. This indicates she has the
ability to make an informed decision regarding medication. Dr. Moin does not believe there is a less
restrictive environment that would render the same or similar supervision. She is in lock-up and
does not have privileges on the grounds.

 On redirect examination, Dr. Moin stated that L.W. has suffered from her mental illness for
at least the last several months. The disorganized thinking, confused behavior, grandiose and
delusional behavior and ideas which have been persistent throughout those months evidence a
continuing pattern of behavior that tends to confirm L.W.'s distress and the deterioration of her
ability to function. 

 L.W. testified in her own behalf. She stated that she wants to go home and she has income
to live on in the form of disability payments. She does not want to hurt herself or anyone else. She
has worked all her life and needs no help taking showers, combing her hair, or putting on clothes.

 On cross-examination, in response to the State's questions about her prior job experience,
L.W. said she had been living in a little trailer in the woods with no transportation and no job. She
clarified that now she has money for transportation. She stated that she did architecture and drafting. 
She also stated she worked as a banquet waitress. She was on food stamps and someone from a state
social service agency took her grocery shopping. She prepared her own meals and lived by herself.

 The trial court entered an order for temporary inpatient mental health services after
determining that the evidence supports the allegations that L.W. is mentally ill and that she is
suffering severe and abnormal mental, emotional, or physical distress, is experiencing substantial
mental or physical deterioration of her ability to function independently, which is exhibited by her
inability to provide for her basic needs, and she is unable to make a rational and informed decision
as to whether or not to submit to treatment. The court ordered L.W. committed to Rusk State
Hospital for a period not to exceed ninety days.


Privileged Communications

 In her second issue, L.W. asserts the trial court erred in admitting evidence over objections
of privilege. Specifically, she complains that Dr. Plyler's certificate indicates that he failed to inform
her that communication with him would not be privileged. She argues that the physician-patient
privilege provided for in Texas Rules of Evidence 509 and 510 applies, making that certificate, and
all information regarding L.W. prior to her stay at Rusk State Hospital, inadmissible. In her sixth
issue, L.W. asserts that Dr. Plyler's failure to inform L.W. that the communication would not be
privileged was a fatal defect that rendered that certificate invalid. Further, she argues, because one
of the certificates was invalid there was, in effect, only one of the two required physicians'
certificates on file at the time of the hearing. Therefore, her argument continues, the judgment was
void as a matter of law.

 Evidentiary rulings are committed to the trial court's sound discretion. City of Brownsville
v. Alvarado, 897 S.W.2d 750, 753 (Tex. 1995). A trial court abuses its discretion when it acts
without regard for any guiding rules or principles. Id. at 754. An appellate court must uphold the
trial court's evidentiary ruling if there is any legitimate basis for the ruling. State Bar of Texas v.
Evans, 774 S.W.2d 656, 658 n.5 (Tex. 1989) (per curiam).

 L.W. was committed pursuant to Chapter 574 of the Texas Health and Safety Code. See Tex.
Health & Safety Code Ann. §§ 574.001-574.154 (Vernon 2003). The Texas Health and Safety
Code provides that a professional, defined as a person licensed by the state to diagnose, evaluate, or
treat mental disorders, may disclose confidential information in an involuntary commitment
proceeding for court-ordered treatment under Chapter 574. Tex. Health & Safety Code Ann.
§§ 611.001(2)(B), 611.006(a)(10)(B) (Vernon 2003). Further, Section 574.031(e) specifically
provides that the Texas Rules of Evidence apply to a hearing for court-ordered mental health services
unless those rules are inconsistent with the Texas Mental Health Code. Tex. Health & Safety
Code Ann. § 574.031(e) (Vernon 2003). Therefore, the trial court did not err in allowing into
evidence Dr. Plyler's certificate and any information contained in it or any information regarding
L.W. prior to her stay at Rusk State Hospital. 

 A warning regarding the relinquishment of confidentiality is not statutorily required to be
included in the certificate of medical examination for mental illness. Tex. Health & Safety Code
Ann. § 574.011 (Vernon 2003). Therefore, the failure to warn does not constitute a defect in the
certificate. As the certificate was not fatally defective, it is properly counted as one of two valid
physician's certificates on file at the time of the hearing. We overrule issues two and six.


Personal Knowledge and Hearsay

 In her third and fourth issues, L.W. contends the trial court erred in admitting the physicians'
certificates, recommendations of the treatment team, and the medical records of Rusk State Hospital
because the testifying witness, Dr. Moin, had no personal knowledge of the alleged incidents to
which he testified and the information contained in the material offered is the product of hearsay. 
She argues that Dr. Moin went into great detail regarding reports from unnamed sources as to alleged
acts of self injury and the extent of L.W.'s injuries. She contends that since Dr. Moin had no
personal knowledge of the incidents, he could not have attested to their accuracy or the credibility
of their source. 

 L.W.'s counsel stipulated to the qualifications of the testifying doctor as an expert in the field
of mental health care and that the physicians' certificates, recommendations of the treatment team,
and the medical records of Rusk State Hospital are business records. This stipulation precluded the
need for the State to lay a predicate. Pursuant to Rule of Evidence 803, business records are
excluded from the hearsay rule and the person testifying from a business record is not required to
have personal knowledge of the truth of the contents of that business record. Tex. R. Evid. 803(6). 
Further, an expert is permitted to rely on the facts and data upon which he bases an opinion even in
the absence of personal knowledge. Tex. R. Evid. 703. The trial court did not abuse its discretion
by overruling L.W.'s objections based on hearsay and a lack of personal knowledge. We overrule
L.W.'s third and fourth issues.


Prejudice

 In her fifth issue, L.W. contends the trial court erred in admitting Dr. Moin's testimony
because it was highly prejudicial and that prejudice greatly outweighed any relevance to the matters
before the court. She argues that to allow the doctor to "testify to unproven allegations of acts of an
unspecified time period and from an unidentified source not present for cross-examination as to
accuracy and credibility was clearly meant to prejudice the trier-of-fact and commit [her] on
unfounded and unproven allegations."

 The fact that evidence has some prejudicial effect is insufficient to warrant its exclusion. 
Pittsburgh Corning Corp. v. Walters, 1 S.W.3d 759, 772 (Tex. App.-Corpus Christi 1999, pet.
denied). Rather, there must be a demonstration that introduction of the evidence would create a
danger of unfair prejudice to the objecting party. Tex. R. Evid. 403; Walters, 1 S.W.3d at 772. 
Unfair prejudice means an undue tendency to suggest a decision on an improper basis. Weidner v.
Sanchez, 14 S.W.3d 353, 365 (Tex. App.-Houston [14th Dist.] 2000, no pet.). Moreover, there must
be a showing that the danger of unfair prejudice substantially outweighs the evidence's relevance. 
Tex. R. Evid. 403. 

 Here, the facts presented at the hearing went directly to the issues upon which the State had
the burden of proof. Dr. Moin is L.W.'s treating physician and his testimony was, in large part,
based on his personal interactions with her. L.W. does not direct our attention to specific testimony
of "unproven allegations of acts of an unspecified time period and from an unidentified source." Our
review of Dr. Moin's testimony reveals no such testimony. We cannot say that the probative value
of Dr. Moin's testimony and the information derived from the medical records is substantially
outweighed by the danger of unfair prejudice. Consequently, the trial court did not abuse its
discretion in allowing the testimony over L.W.'s objection that the evidence was prejudicial. We
overrule L.W.'s fifth issue.


Sufficiency of the Evidence

 In her first issue, L.W. asserts there is no evidence, or in the alternative, factually insufficient
evidence to support the order of commitment. She argues that the record is devoid of any factual
basis in support of the doctor's testimony. She further argues that the evidence merely shows she
may be mentally ill and may be in need of hospitalization which is insufficient to justify
commitment. Accordingly, she contends the State failed to show clear and convincing evidence
tending to confirm her distress and the deterioration of her ability to function, or of her ability to
make a rational and informed decision as to whether to submit to treatment. Thus, she argues, the
State failed to meet its evidentiary burden under the statute.

 In a legal sufficiency review where the burden of proof is clear and convincing evidence, the
reviewing court must consider all of the evidence in the light most favorable to the finding to
determine whether a reasonable trier of fact could have formed a firm belief or conviction that its
finding was true. In re J.F.C., 96 S.W.3d 256, 266 (Tex. 2002). The reviewing court must assume
that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do
so. Id. A court should disregard all evidence that a reasonable factfinder could have disbelieved or
found to have been incredible. Id. 

 In addressing a factual sufficiency of the evidence challenge, this court must give due
consideration to evidence that the factfinder could reasonably have found to be clear and convincing. 
In re C.H., 89 S.W.3d 17, 25 (Tex. 2002). We must determine whether the evidence is such that
a factfinder could reasonably form a firm belief or conviction about the truth of the State's
allegations. Id. "If, in light of the entire record, the disputed evidence that a reasonable factfinder
could not have credited in favor of the finding is so significant that a factfinder could not reasonably
have formed a firm belief or conviction, then the evidence is factually insufficient." In re J.F.C.,
96 S.W.3d at 267.

 The trial judge may order a proposed patient to receive court-ordered temporary inpatient
mental health services if the judge or jury finds, from clear and convincing evidence, that the
proposed patient is mentally ill and, as a result of the mental illness he is likely to cause serious harm
to himself, is likely to cause serious harm to others, or is (i) suffering severe and abnormal mental,
emotional, or physical distress, (ii) experiencing substantial mental or physical deterioration of his 
ability to function independently, which is exhibited by his inability, except for reasons of indigence,
to provide for his basic needs, including food, clothing, health, or safety, and (iii) unable to make
a rational and informed decision as to whether or not to submit to treatment. Tex. Health &
Safety Code Ann. § 574.034(a) (Vernon 2003). To be clear and convincing under this statute, the
evidence must include expert testimony and, unless waived, evidence of a recent overt act or a
continuing pattern of behavior that tends to confirm either the likelihood of serious harm to the
proposed patient or others, or the proposed patient's distress and the deterioration of his ability to
function. Tex. Health & Safety Code Ann. § 574.034(d) (Vernon 2003). Clear and convincing
evidence means the measure or degree of proof which will produce in the mind of the trier of fact
a firm belief or conviction as to the truth of the allegations sought to be established. State v.
Addington, 588 S.W.2d 569, 570 (Tex. 1979).

 The State provided expert testimony explaining that L.W. is mentally ill and describing a
continuing pattern of behavior by L.W. The doctors' certificates indicate that L.W. is confused,
disoriented, grandiose, delusional, and exhibiting disorganized thinking. Dr. Moin explained that
L.W. is very confused, disorganized, very agitated, lacks insight into her illness, is grandiose, and
delusional which evidences a continuing pattern of behavior that tends to confirm her distress and
the deterioration of her ability to function. Considering all the evidence in the light most favorable
to the findings, we conclude a reasonable trier of fact could have formed a firm belief or conviction

that these findings were true. See In re J.F.C., 96 S.W.3d at 266. This satisfies the statutory
requirement for clear and convincing evidence in support of the order for temporary inpatient mental
health services. See Tex. Health & Safety Code Ann. § 574.034(d). The evidence is legally
sufficient to support the trial court's order. See In re J.F.C., 96 S.W.3d at 266. 

 In addressing L.W.'s factual sufficiency complaint, we consider the evidence the factfinder
could reasonably have found to be clear and convincing. In re C.H., 89 S.W.3d at 25. The evidence
shows D.P. can dress herself, feed herself, and take care of her personal hygiene without assistance. 
However, rather than creating confidence in her ability to provide for herself, L.W.'s various
explanations as to her prior job experience raise more questions as to her ability to provide for
herself. The evidence regarding her disability income was vague and unsubstantiated. She is able
to initiate conversation and respond to questions, but somewhat inappropriately. Her responses to
questions put to her by the State and her own counsel indicate that she is not entirely rational. In
light of the entire record, we cannot say that the trial court could not reasonably form a firm belief
or conviction that L.W. is distressed and that her ability to function has deteriorated, thereby
requiring inpatient mental health services. See id. Thus, the evidence is factually sufficient to
support the trial court's findings. Because we hold the evidence is both legally and factually
sufficient to support the trial court's order, we overrule L.W.'s first issue.


Conclusion

 The trial court did not err in admitting the complained-of evidence and the order is not void
for failure to have two physician's certificates on file at the time of the hearing. Further, the
evidence is legally and factually sufficient to support the trial court's order of commitment for
temporary inpatient mental health services.

 Accordingly, we affirm the trial court's order of commitment for temporary inpatient mental
health services.




 SAM GRIFFITH 

 Justice



Opinion delivered October 22, 2003.

Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.

























(PUBLISH)