**Willie LEE and The El Paso County Sheriff'S Association, Inc., Appellants,**

v.

**EL PASO COUNTY, Appellee.**

No. 08–96–00415–CV.

Court of Appeals of Texas, El Paso.

March 12, 1998.

Rehearing Overruled May 13, 1998.

---

Roberta B. Cross, El Paso, for Appellants.

Jose R. Rodriguez, County Atty., Jeanne C. Collins, Asst. County Atty., El Paso, for Appellee.

Before BARAJAS, C.J., and LARSEN and CHEW, JJ.

## *OPINION*

LARSEN, Justice.

Willie Lee, represented by the El Paso County Sheriff's Association, appeals from the trial court's order granting El Paso County's motion for summary judgment. We affirm in part and reverse in part. We remand the cause with instructions.

## FACTS

This dispute involves the interpretation of a sick leave "buy back" provision contained in the collective bargaining agreement (CBA) between the El Paso County Sheriff's Association and El Paso County. The disputed provision is Article 11, section 2 of the CBA. The difficulty in interpretation arises because a portion of the CBA was amended on June 26, 1990. The disputed article formerly read:

*Section 2.* Sick leave is accumulated from the date of employment for all Deputies at the rate of 4.616 hours per pay period. Maximum accumulation is ninety (90) days.

As amended on June 26, 1990, the article reads:

*Section 2.* Sick leave is accumulated from the date of employment for all Deputies at the rate of 4.616 hours per pay period. Maximum payout on accumulation is ninety days. The County will purchase back days of accumulated sick leave over the ninety (90) days at the rate of three (3) days' sick leave for one (1) day's pay, at the end of the Deputy's career, whether it be retirement or termination or resignation.

Lee began working for the Sheriff's Department on August 8, 1977 under the original CBA with the original sick leave provision. Lee retired on January 31, 1995 after the amended sick leave "buy back" provision had been included in the CBA. When he retired, Lee sought payment from El Paso County for all unused sick leave from the time he began working at the Sheriff's Department. The County agreed to pay Lee for his unused sick leave from June 26, 1990 forward. Payment for sick leave accrued before that date is the subject of this dispute.

## PROCEDURAL HISTORY

Under the terms of the CBA, the dispute was submitted to binding arbitration. At the arbitration hearing on May 24, 1995, the County argued that the buy back provision applied only to sick leave accrued after June 26, 1990. The County contended that any other interpretation of the buy back provision would violate Article III, section 53 of the Texas Constitution, as a grant of extra compensation after service had been rendered. The relevant constitutional language reads:

The Legislature shall have no power to grant, or to authorize any county or municipal authority to grant, any extra compensation, fee or allowance to a public officer, agent, servant or contractor, after service has been rendered, or a contract has been entered into, and performed in whole or in part; nor pay nor authorize the payment of, any claim created against any county or municipality of the State, under any agreement or contract, made without authority of law.[1]

The Sheriff's Association countered that a clear reading of the buy back provision indicates it applies to all unused sick leave from the date of employment.

The arbitrator issued his decision sustaining Lee's grievance and ordering the County to pay an additional $7,451.12 for 680.74 hours of unused sick leave Lee accrued before the June 26, 1990 amendment to the CBA. In his decision, arbitrator stated that "[t]he constitutionality of that agreement is a matter for the courts to resolve."

The County then filed a petition in district court seeking to set aside the arbitrator's award, urging the arbitrator acted without jurisdiction, exceeded any jurisdiction that he did have, and arrived at a decision that was not supported by competent, material, and substantial evidence. The County sued Willie Lee, the El Paso County Sheriff's Association, and Richard F. Dole Jr., the arbitrator. Dole filed his motion to dismiss based upon arbitrator immunity, a doctrine akin to judicial immunity. In a motion for summary judgment, the County argued that the arbitrator's award was an unconstitutional retroactive grant of benefits, and should be set aside. The trial court granted summary judgment for the County, but specifically declined to rule on the arbitrator's motion to dismiss, stating:

Well, if Mr. Dole isn't present to present his motion to dismiss, I am going to have to set that aside and hear that at another

---

1. Tex. Const. art. III, § 53.

date. I mean, basically, if you are not representing him and he is willing to proceed pro se, then he needs to be here. So, we will go ahead and proceed with the motion for summary judgment.

The summary judgment contained a Mother Hubbard clause, stating "all relief requested and not expressly granted is denied." This appeal follows.

### JURISDICTION OVER THE SUMMARY JUDGMENT

Before determining the merits of the appeal, we must first visit the question of whether we have jurisdiction over a summary judgment, containing a Mother Hubbard clause, which purports to dispose of a party whose contentions were not addressed in the County's summary judgment motion. As we have noted, arbitrator Dole filed his motion to dismiss the suit against him urging that, as the equivalent of a judge chosen by the parties, an arbitrator is immune from litigation concerning the enforceability of the award. This appears to be a question of first impression in Texas state law, although other jurisdictions have answered the question favorably to the arbitrator.[2] The trial court specifically declined to address the motion to dismiss without the presence of the arbitrator. The County's summary judgment, moreover, requests no relief concerning the arbitrator.

██ The threshold question, then, is whether this summary judgment, which would otherwise be interlocutory but purports to be final, can be reviewed where it granted more relief than the summary judgment requested, and where the trial court specifically declined to consider issues raised

by one of the defendants. We conclude that the recent case of *Bandera Electric Cooperative v. Gilchrist*[3] controls. There, a summary judgment containing a Mother Hubbard clause did not dispose of counterclaims brought by Gilchrist. The Supreme Court held that the correct procedure, in a case where a summary judgment erroneously grants more relief than that requested by the parties and the summary judgment is made final by a Mother Hubbard clause, is to reverse that part of the judgment that exceeded the relief requested, and review the remainder on its merits.[4] To the extent that the summary judgment purports to grant relief against arbitrator Richard Dole, therefore, it is reversed and remanded to the trial court for further proceedings consistent with this opinion.

### JURISDICTION TO REVIEW ARBITRATION AWARD

██ In Point of Error One, Lee and the Sheriff's Association maintain that the trial court lacked jurisdiction to set aside the arbitrator's award. Jurisdiction is conferred by the Texas Constitution and statutory enactments, together with the existence of facts necessary for the court to exercise its jurisdiction.[5] Whether a court has jurisdiction to hear a case is a question of law.[6] We presume in favor of a trial court's jurisdiction unless lack of jurisdiction affirmatively appears on the face of the petition.[7] In any doubtful case, we construe plaintiff's pleadings in favor of jurisdiction.[8] The party seeking dismissal for lack of jurisdiction maintains the burden of proof.[9]

██ A trial court may review and vacate an arbitrator's award only in limited circumstances.[10] Absent an allegation of a statuto-

---

2. See *Corey v. New York Stock Exch.*, 691 F.2d 1205, 1208–11 (6th Cir.1982); *Tamari v. Conrad*, 552 F.2d 778, 781 (7th Cir.1977); *Cahn v. Int'l Ladies' Garment Union*, 311 F.2d 113, 114–15 (3rd Cir.1962).

3. 946 S.W.2d 336, 337 (Tex.1997).

4. *Id.*

5. See *Giddens v. State*, 818 S.W.2d 501, 502 (Tex. App.—Corpus Christi 1991, no writ).

6. See *North Alamo Water Supply Corp. v. Texas Dep't of Health*, 839 S.W.2d 455, 457 (Tex.App.— Austin 1992, writ denied).

7. *Giddens*, 818 S.W.2d at 502.

8. *Id.*

9. See *Southwestern Apparel, Inc. v. Bullock*, 598 S.W.2d 702, 704 (Tex.Civ.App.—Austin 1980, no writ).

10. See generally TEX. CIV. PRAC. & REM.CODE ANN. § 171.014(a) (Vernon 1997) (outlining statutory

ry or common law ground to vacate or modify an arbitration award, a reviewing court lacks jurisdiction to review the arbitrator's decision.[11] Here, the County's petition alleged both statutory and common law grounds conferring jurisdiction upon the trial court. Because of the unique interplay of the common law and statutes in the area of arbitration, Texas courts have held that statutory arbitration and common law arbitration exist side-by-side.[12] As this agreement to arbitrate is not covered by the Texas General Arbitration Act,[13] we must determine whether the trial court correctly determined the validity and *binding effect* of the arbitration under Fire and Police Employees Relations Act [14] or relevant common law rules.[15]

We find we need not reach the issue of statutory jurisdiction, as common law jurisdiction exists here. Under the common law, a trial court can vacate an arbitrator's award if the award violates public policy or the law [16] or exceeded the scope of the arbitrator's authority.[17] Because the County alleged in its petition that the arbitrator exceeded his jurisdiction by ordering the County to violate the Texas Constitution, the trial court was correct in finding that it had juris-

diction under the common law to review and vacate the arbitration award. Point of Error One is overruled.

## TEXAS CONSTITUTION

In their second and third points of error, Lee and the Sheriff's Association maintain that the trial court erred in vacating the arbitrator's award, contending that the trial court substituted its own judgment for that of the arbitrator, which as a general rule it may not do. The irony here is that the trial court was forced to substitute its judgment for that of the arbitrator because the arbitrator specifically intended to defer any determination on the constitutional issue to the courts. The United States Supreme Court has authorized the courts to substitute their own judgment for that of an arbitrator if the arbitration award, left unchanged, would violate public policy.[18] Explaining that authorization, the United States Supreme Court has written that:

A court's refusal to enforce an arbitrator's award under a collective-bargaining agreement because it is contrary to public policy is a specific application of the more

grounds for reviewing and vacating arbitrator's award); *L.H. Lacy Co. v. City of Lubbock*, 559 S.W.2d 348, 351–53 (Tex.1977) (setting forth common law grounds for reviewing and vacating arbitrator's award).

11. *See Raffaelli v. Raffaelli*, 946 S.W.2d 139, 141 (Tex.App.—Texarkana 1997, no writ); *J.J. Gregory Gourmet v. Antone's Import*, 927 S.W.2d 31, 33 (Tex.App.—Houston [1st Dist.] 1995, no writ); *Powell v. Gulf Coast Carriers, Inc.*, 872 S.W.2d 22, 23 (Tex.App.—Houston [14th Dist.] 1994, no writ).

12. *See L.H. Lacy Co.*, 559 S.W.2d at 351–53; *see also Monday v. Cox*, 881 S.W.2d 381, 385 n. 1 (Tex.App.—San Antonio 1994, writ denied).

13. The Texas General Arbitration Act expressly excludes arbitration agreements dealing with collective bargaining agreements between an employer and a labor union. TEX. CIV. PRAC. & REM. CODE ANN. § 171.001(a) (Vernon 1997).

14. In 1973, the Legislature granted fire fighters and police officers the right to collectively bargain and organize. The newest version of the statute, the Fire and Police Employees Relations Act (Act) allows fire fighters and police officers to form an association to represent them in negotiations and disputes between them and their public

employers. Although sheriffs and officers of sheriff's departments are not specifically covered by the Act, this court has interpreted the Act to include sheriff's departments. *See Commissioners Court of El Paso County v. El Paso County Sheriff's Deputies Ass'n*, 620 S.W.2d 900, 902 (Tex.Civ.App.—El Paso 1981, writ ref'd n.r.e.).

15. *See Central Nat'l Ins. Co. of Omaha v. Glover*, 856 S.W.2d 490, 492 (Tex.App.—Houston [1st Dist.] 1993, no writ) (emphasis added); *see also L.H. Lacy Co.*, 559 S.W.2d at 352.

16. *See United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 42, 108 S.Ct. 364, 373, 98 L.Ed.2d 286, 301 (1987); *W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 766, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298, 306–07 (1983); *Goodyear Tire & Rubber Co. v. Sanford*, 540 S.W.2d 478, 483 (Tex.Civ.App.—Houston [14th Dist.] 1976, no writ) (holding that public policy is a proper basis on which a court may vacate a labor arbitration award).

17. *See Johnson v. Korn*, 117 S.W.2d 514, 521 (Tex.Civ.App.—El Paso 1938, writ ref'd).

18. *See W.R. Grace & Co.*, 461 U.S. at 766, 103 S.Ct. at 2183, 76 L.Ed.2d at 306–07.

general doctrine, rooted in the common law, that a court may refuse to enforce contracts that violate law or public policy. That doctrine derives from the basic notion that no court will lend its aid to one who founds a cause of action upon an immoral or illegal act, and is further justified by the observation that the public's interests in confining the scope of private agreements to which it is not a party will go unrepresented unless the judiciary takes account of those interests when it considers whether to enforce such agreements.... In *W.R. Grace*, we recognized that a *'court may not enforce a collective bargaining agreement that is contrary to public policy,'* and stated that *'the question of public policy is ultimately one for resolution by the courts.'* We cautioned, however, that a court's refusal to enforce an arbitrator's interpretation of such contracts is limited to situations where the contract as interpreted would violate 'some explicit public policy' that is 'well defined and dominant, and is to be ascertained "by reference to the laws and legal precedents and not from general considerations of supposed public interests."' [19]

This public policy exception applies here. The explicit public policy at issue is the use of government funds. Texas voters adopted Article III, section 53 of the Constitution to prevent the counties or municipalities from freely giving away public moneys for services previously rendered or for which no valid legal authorization existed and for which the public would receive no return.[20] We find a public policy that has been adopted as part of the state's constitution is a well-defined and dominant policy.

Further, this policy is readily ascertained by reference to the laws and legal precedents of the State of Texas. The Texas Constitu-

tion, certainly easily ascertainable law, specifically prohibits the type of payment the arbitrator sought to award here.[21]

Moreover, the San Antonio Court of Appeals, ruling on very similar facts (without the arbitration dilemma) has held that applying an expanded sick leave reimbursement policy retroactively would violate this constitutional provision.[22]

■ Thus, we conclude that this issue is a well defined and dominant public policy. The arbitrator interpreting the contract should have given the collective bargaining agreement a construction or interpretation that would have rendered it consistent with constitutional and precedential mandates. Because the arbitrator chose an interpretation that was invalid, or inconsistent with constitutional and precedential mandates, we cannot say that the trial court erred. The public policy exception both allows and encourages trial courts to set aside arbitration awards that conflict with well defined and dominant public interests, which must certainly include compliance with the Texas Constitution. We overrule Points of Error Two and Three.

### CONCLUSION

We affirm the trial court's judgment as to Willie Lee and the Sheriff's Association. We reverse the judgment to the extent that it purports to dispose of the arbitrator's motion to dismiss. We remand the cause with instructions to the trial court to enter its order for further proceedings consistent with this opinion.

**19.** *United Paperworkers Int'l Union*, 484 U.S. at 42–43, 108 S.Ct. at 373, 98 L.Ed.2d at 301 (emphasis added) (internal citations omitted).

**20.** Tex. Const. art. III, § 53 interp. commentary (Vernon 1997).

**21.** Tex. Const. art. III, § 53.

**22.** *Ward v. City of San Antonio*, 560 S.W.2d 163, 166 (Tex.Civ.App.—San Antonio 1977, writ ref'd n.r.e.). Additionally, the Attorney General issued

an opinion describing how a contract establishing a sick leave pool should be established in order to comply with Article III, § 53 of the Texas Constitution. *See* Op. Tex. Att'y Gen. No. DM–129 (1992). In DM–129, the Attorney General states: "Article III, section 53 of the Texas Constitution bars a city from implementing a sick leave pool in a way that grants an additional benefit to its employees for work already performed."