**Opinion issued June 24, 2014**



**In The**

# Court of Appeals

**For The**

# First District of Texas

————————————

**NO. 01-13-00152-CV**

————————————

**KMR MINDEN, L.P., Appellant**

**V.**

**HARRIS COUNTY APPRAISAL DISTRICT, Appellee**

---

**On Appeal from the 164th District Court**
**Harris County, Texas**
**Trial Court Case No. 2011-70247**

---

**MEMORANDUM OPINION**

In this ad valorem property tax case, KMR Minden, L.P. ("KMR Minden") sued the Harris County Appraisal District ("HCAD"), alleging that HCAD had overvalued its property for the 2011 tax year. HCAD filed a plea to the

jurisdiction, arguing that the trial court lacked jurisdiction because KMR Minden failed to comply with the prepayment requirement of Texas Tax Code section 42.08. The trial court granted the plea to the jurisdiction and dismissed the case. In ten issues, KMR Minden challenges the legal and factual sufficiency of the evidence to support four of the trial court's findings of fact, challenges the correctness of thirteen conclusions of law, and contends that the trial court erroneously determined that it had not substantially complied with Tax Code section 42.08(d), which excuses a taxpayer from the prepayment requirement if it demonstrates an inability to pay the taxes at issue.[1]

We affirm.

## Background

KMR Minden owns property at 5444 Minden Street in Houston and operates twenty-six duplex units on the property. For the 2011 tax year, HCAD initially appraised the subject property at $628,000. KMR Minden timely protested the appraised value before the Harris County Appraisal Review Board ("the Board"), and, as a result of the protest, the Board lowered the appraised market value of the

---

[1] KMR Minden raised eleven issues. In its seventh issue, KMR Minden argued that the trial court committed reversible error when it failed to file findings of fact and conclusions of law. This Court abated the appeal for the trial court to file findings and conclusions, which the trial court did. KMR Minden's seventh issue is thus moot, and we do not address this issue.

2

property to $476,000. Unsatisfied with this valuation, KMR Minden sought judicial review of the Board's determination in the district court.

KMR Minden alleged that HCAD excessively and unequally appraised its property. KMR Minden included the following statement in its original petition: "Pursuant to [Tax Code] Section 42.08 Plaintiff intends on timely paying all taxes due on the property, or the taxes due on the undisputed portion of the value of the property, or, if unable to timely pay the lesser of these amounts, Plaintiff requests relief from the Court."

Several months later, HCAD filed a plea to the jurisdiction, arguing that the trial court lacked jurisdiction because KMR Minden did not comply with the prepayment requirement of Tax Code section 42.08. Specifically, HCAD argued that KMR Minden failed to pay any portion of its tax bill by the delinquency date, February 1, 2012. HCAD attached exhibits to its plea to the jurisdiction, including a delinquent tax statement, dated April 13, 2012, reflecting that KMR Minden owed $13,363.50 in property taxes.

KMR Minden responded, filed an oath of inability to pay the taxes at issue, and requested that the trial court determine whether it had substantially complied with section 42.08(d), which allows trial courts to excuse the prepayment requirement. KMR Minden argued that it paid the taxes at issue in full on April 19, 2012, as it "became able to afford to do so" and that, before that date, it "was

3

unable to afford to pay the taxes." It argued that the funds that it had in its bank account as of the delinquency date were not enough to cover the entire tax bill and "were already obligated to outstanding, uncleared transactions." KMR Minden was able to pay its delinquent taxes in April 2012 only after obtaining loans from the individual members of its general partner. It argued, "Had the owner paid the taxes prior to receiving the loan funds, KMR Minden L.P. would not have had adequate funds to meet other financial obligations that have resulted in consequences ranging from ceasing operation of the property to foreclosure on the property by the bank that held the mortgage." KMR Minden attached financial records, primarily composed of bank statements from January through April 2012, to support its contention that it lacked the ability to pay the assessed taxes on the delinquency date.

KMR Minden also attached the affidavit of Scott Ray, one of the members of KMR Minden's general partner, and a representative of KMR Minden. He averred:

> The ad valorem taxes for the property were due before February 1, 2012. The ad valorem taxes for the property were not paid prior to February 1, 2012 because as of January 31, 2012, the due date, the ownership entity, KMR Minden LP, was financially unable to pay those taxes. The base taxes for the 2011 tax year for the property were $12,039.16. As of January 31, 2012, KMR Minden LP had a balance of $1,523[.]24 in the bank. On January 31, 2012, there were still outstanding check, debt, and credit transactions that represented an amount larger than the funds available. In late 2011 and early 2012, KMR Minden, LP had income from rent charged to tenants of

4

the property. KMR Minden had expenses for the mortgage on the property, fire and hazard insurance, flood insurance, management company fees, employee salaries, electricity service, water and sewer service, trash collection service, telephone and internet service, and maintenance costs, eviction costs and make ready costs. Without paying these expenses, the property would have been foreclosed by the mortgage company, sued by employees for non-payment of wages, had utilities cut off and unable to operate, and/or been unable to operate in a safe manner for the public and its tenants. The amount of taxes due significantly exceeded the available funds for the next few months. As of March 2012, the owner was still unable to operate at a profit that would allow for the taxes to be paid. As a result, several members of the . . . General Partner entity, CSP Development, LLC, including myself, made loans to KMR Minden, LP in order to allow the taxes to be paid and other operating expenses met on or around April 9, 2012. As soon as the funds became available from the loans made by general partner members, the taxes and all penalties and interest were paid. KMR Minden LP would have paid the taxes timely had the funds been available. KMR Minden LP would not have willingly incurred penalties and interest that were in excess of 10% of the base tax had the funds been available.

The trial court held a hearing on HCAD's plea to the jurisdiction, at which Ray testified. Ray testified that he is one of six members of KMR Minden's general partner and one of three involved with the day-to-day activities of KMR Minden. He acknowledged that the subject property is an income-producing property. He stated that KMR Minden was solvent around the time of the delinquency date and that it received rental income from the tenants on the property on a monthly basis, but that it was also having financial difficulties because the rental income was not enough to cover the expenses needed to maintain the property. Three of the individual members occasionally contributed

5

their own funds to cover expenses, first in October 2011 and then again in April 2012. None of the funds contributed in October were specifically allocated for tax purposes because, at that time, the members believed they would have enough funds to be able to pay the property taxes by the end of January.

Ray testified generally regarding the various expenses for the property, such as the mortgage, the utility bills, and the office staff's salaries, and the consequences that could occur from those expenses not being paid, such as foreclosure and utilities being shut off. Ray stated that at the end of January 2012, KMR Minden only had about $1,500 in its bank account, which was not enough to cover its expenses. He testified that KMR Minden was not financially able to pay the assessed taxes for the 2011 tax year in a timely manner.

On cross-examination, Ray agreed that in the months after KMR Minden received its tax bill in the fall of 2011, it chose to pay other expenses instead of the assessed taxes. Ray had the following exchange with HCAD's counsel:

[HCAD's counsel]: If you'd wanted to, if you'd really wanted to, you could've sat down and wrote a check and paid your taxes, couldn't you?

[Ray]: That would've implied a choice to not pay something else that would've caused immediate concern to the business.

Ray admitted that KMR Minden never attempted to work out a payment plan with either the Harris County tax assessor-collector or with any of its other creditors.

6

The trial court ultimately granted HCAD's plea to the jurisdiction and denied KMR Minden's "Motion for Substantial Compliance and/or Excusing Prepayment." KMR Minden timely requested that the trial court file findings of fact and conclusions of law, and, when the trial court failed to do so, it requested past due findings and conclusions, which the trial court still did not file. This appeal followed, and this Court abated the appeal and ordered the trial court to file findings and conclusions.

The trial court issued findings and conclusions, and KMR Minden challenges several of these findings and conclusions on appeal. KMR Minden challenges the following findings of fact and conclusions of law:

FINDINGS OF FACT

10. KMR's appeal was not accompanied by any statement in writing on the amount of ad valorem taxes it proposed to pay under Section 42.08(b) of the Texas Property Tax Code.

17. The financial records offered by KMR showed it was making regular electronic payments to "Chk . . . 2235" in the following amounts:

- January 2012: $4,629.76
- February 2012: $6,764.99
- March 2012: $8,077.28
- April 2012: $3,781.60

No explanation was given as to what these expenditures were for and why they could not be used to pay ad valorem taxes. No evidence or bank records were offered to show if these payments were also being paid prior to January 1, 2012, and why they could not have been used to pay ad valorem taxes prior to delinquency.

7

18. The evidence shows that KMR had sufficient funds to timely pay its ad valorem taxes, but chose to pay other bills instead. Therefore, KMR voluntarily elected not to pay its ad valorem taxes prior to delinquency.

19. Three partners of the General Partner of KMR-Minden LP (Chuck Hoskins, Frances Neubig, and Scott A. Ray) loaned KMR a total of $30,000.00 in April of 2012. No credible evidence was offered as to why these partners could not have loaned funds to KMR prior to the delinquency date for paying its ad valorem taxes.

CONCLUSIONS OF LAW

2. KMR had the burden of proof to show that it was financially unable to pay any portion of its ad valorem taxes prior to the delinquency date and that it was excused from substantially complying with Section 42.08(b) of the Texas Property Tax Code.

5. KMR failed to substantially comply with subsection (d) [of Section 42.08] because the evidence showed that KMR had sufficient funds to pay the ad valorem taxes prior to delinquency, but failed to do so.

6. KMR failed to substantially comply with subsection (d) because the partners could have, but did not, pay the ad valorem taxes prior to delinquency.

7. Section 42.08's requirement to pay taxes prior to delinquency does not unreasonably deny KMR access to the courts because KMR was solvent and had sufficient funds or access to funds from its partners to pay the ad valorem taxes prior to delinquency.

8. Substantial compliance with the prepayment requirements and the inability to pay requirements set forth in Section 42.08(b) and (d) of the Texas Property Tax Code for challenging property tax valuation is a jurisdictional prerequisite to the District Court's subject-matter jurisdiction.

13. Section 42.08(b-1) requires a property owner who elects to file the amount of ad valorem taxes due on the portion of the taxable property that is not in dispute to file with the appeal a statement in writing of the amount of the taxes the property owner proposes to pay.

8

15.    The portions of the bank statements submitted by KMR to show a lack of funds available to the property owner to pay any ad valorem taxes prior to the delinquency date, were too limited in time to show that the property owner had no funds available to pay any amount of ad valorem taxes at any time before the delinquency date.

16.    The bank statements submitted by KMR with its Motion showed funds were in the property owner's bank account during the thirty (30) days before the delinquency date and showed a previous balance in the account from the prior month.  There was no credible evidence explaining why those funds were not used to make any payment on the ad valorem taxes due.

17.    Evidence contained in KMR's Exhibit "A" showed funds were in the property owner's bank account during the thirty (30) days before the due date of January 31, 2012, including deposits totaling $14,559.00.  There was no credible evidence that some portion of those funds could not have been available to pay some part of the ad valorem taxes due.

18.    The evidence submitted by KMR did not excuse it from paying any portion of the 2011 ad valorem taxes at any time prior to the delinquency date of February 1, 2012.

20.    KMR did not substantially comply with Texas Property Tax Code Section 42.08(d) because the Oath of Inability to Pay and the documents submitted with the Oath did not demonstrate an inability to pay and, in fact, showed funds were available and no notice was provided to advise the taxing authority that the owner would not be paying the due ad valorem taxes before the delinquency date.

21.    Requiring prepayment prior [to] the delinquency date of February 1, 2012 of some amount of ad valorem taxes on the evidence in this case would not constitute an unreasonable restraint on KMR's access to the courts because the evidence fails to show an inability to pay and there is evidence that funds were available.

22.    The payment by KMR of ad valorem taxes after the delinquency date absent evidence of an inability to pay any amount at any time before the delinquency date in combination with KMR's failure to file a sufficient Oath of Inability to Pay, the submission of documents inconsistent with an inability to pay, the failure of KMR to

file a written election and a statement of the amount of ad valorem taxes it proposed to pay and KMR['s] failure to enter into an installment payment plan demonstrates there was not substantial compliance with either Section 42.08(b) or (d) of the Texas Property Tax Code.

## Standard of Review

Compliance with Tax Code section 42.08's prepayment requirement is "a jurisdictional prerequisite to [the] district court's subject matter jurisdiction to determine property owner's rights."[2] *U. Lawrence Boze' & Assocs., P.C. v. Harris Cnty. Appraisal Dist.*, 368 S.W.3d 17, 23 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (quoting *Lawler v. Tarrant Appraisal Dist.*, 855 S.W.2d 269, 271 (Tex. App.—Fort Worth 1993, no writ)). Whether a trial court has subject matter jurisdiction is a question of law that we review de novo. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998); *U. Lawrence Boze' & Assocs.*, 368 S.W.3d at 23; *see also Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217,

---

[2] In its sixth issue, KMR Minden argues that the trial court erroneously granted HCAD's plea to the jurisdiction because section 42.08 is not a jurisdictional prerequisite to a suit for judicial review, and Tax Code section 42.21(a), governing the timing of filing a petition for judicial review and with which KMR Minden complied, is the only statutory provision that grants jurisdiction to the district court. We have repeatedly held that section 42.08 is a jurisdictional prerequisite to suit and overruled this argument. *See Welling v. Harris Cnty. Appraisal Dist.*, --- S.W.3d ---, No. 01-11-00874-CV, 2014 WL 503781, at *2, 7 (Tex. App.— Houston [1st Dist.] Feb. 4, 2014, no pet. h.); *Palaniappan v. Harris Cnty. Appraisal Dist.*, --- S.W.3d ---, No. 01-11-00344-CV, 2013 WL 6857983, at *3, 8 (Tex. App.—Houston [1st Dist.] Dec. 31, 2013, no pet. h.); *U. Lawrence Boze' & Assocs., P.C. v. Harris Cnty. Appraisal Dist.*, 368 S.W.3d 17, 23 (Tex. App.— Houston [1st Dist.] 2011, no pet.). We therefore overrule KMR Minden's sixth issue.

226, 228 (Tex. 2004) (holding that we review trial court's ruling on plea to jurisdiction de novo).

If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues presented. *Carter v. Harris Cnty. Appraisal Dist.*, 409 S.W.3d 26, 30 (Tex. App.—Houston [1st Dist.] 2013, no pet.). "When a challenge to the existence of jurisdictional facts does not implicate the merits of the case and the facts are disputed, the court must make the necessary fact findings to resolve the jurisdictional issue." *Id.* (citing *Miranda*, 133 S.W.3d at 226 ("Whether a district court has subject matter jurisdiction is a question for the court, not a jury, to decide, even if the determination requires making factual findings, unless the jurisdictional issue is inextricably bound to the merits of the case.")).

When conducting a legal sufficiency review, we credit favorable evidence if a reasonable fact-finder could do so and disregard contrary evidence unless a reasonable fact-finder could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Brown v. Brown*, 236 S.W.3d 343, 348 (Tex. App.—Houston [1st Dist.] 2007, no pet.). We consider the evidence in the light most favorable to the finding under review and we indulge every reasonable inference that would support the finding. *City of Keller*, 168 S.W.3d at 822. In a factual sufficiency review, we consider and weigh all of the evidence and set aside the finding only if

it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam); *Arias v. Brookstone, L.P.*, 265 S.W.3d 459, 468 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).

We review a trial court's conclusions of law as a legal question. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). If we determine that a conclusion of law is erroneous but the trial court rendered the proper judgment, the erroneous conclusion of law does not require reversal. *Id.*; *see also City of Austin v. Whittington*, 384 S.W.3d 766, 793 n.10 (Tex. 2012) ("We may review conclusions of law to determine their correctness. But we will not reverse an erroneous conclusion of law if the trial court rendered the proper judgment.").

### Substantial Compliance with Section 42.08

In its first, second, third, fourth, and fifth issues, KMR Minden contends that the trial court erred in concluding that KMR Minden had not established an inability to pay the assessed taxes by the delinquency date and in granting HCAD's plea to the jurisdiction.

A taxpayer owes a continuing obligation to pay taxes on its property. *Atascosa Cnty. v. Atascosa Cnty. Appraisal Dist.*, 990 S.W.2d 255, 258 (Tex. 1999); *U. Lawrence Boze' & Assocs.*, 368 S.W.3d at 24. Tax Code Chapter 41

entitles a property owner to file an administrative protest of certain actions with the appraisal review board, including the determination of the appraised value of the taxpayer's property. *See* TEX. TAX CODE ANN. § 41.41(a) (Vernon 2008); *U. Lawrence Boze' & Assocs.*, 368 S.W.3d at 24.

Tax Code Chapter 42 governs suits for judicial review of appraisal review board orders. *See* TEX. TAX CODE ANN. §§ 42.01–.43 (Vernon 2008 & Supp. 2013). A property owner is entitled to seek judicial review of an appraisal review board order determining, among other things, a protest by the property owner pursuant to Chapter 41. *See id.* § 42.01(a)(1)(A) (Vernon Supp. 2013). Section 42.08(b) requires:

> Except as provided in Subsection (d), a property owner who appeals as provided by this chapter must pay taxes on the property subject to the appeal in the amount required by this subsection before the delinquency date or the property owner forfeits the right to proceed to a final determination of the appeal. The amount of taxes the property owner must pay on the property before the delinquency date to comply with this subsection is the lesser of
>
> (1) the amount of taxes due on the portion of the taxable value of the property that is not in dispute; or
>
> (2) the amount of taxes due on the property under the order from which the appeal is taken.[3]

---

[3] The current version of the statute, applicable to proceedings pending on or filed on or after June 14, 2013, allows a property owner to comply with section 42.08(b) by paying "the amount of taxes imposed on the property in the preceding tax year." TEX. TAX CODE ANN. § 42.08(b) (Vernon Supp. 2013).

Act of May 12, 1997, 75th Leg., R.S., ch. 203, 1997 Tex. Gen. Laws 1070 (amended 2013) (current version at TEX. TAX CODE ANN. § 42.08(b) (Vernon Supp. 2013)).  If the property owner elects to pay the amount of taxes due on the portion of the taxable value that is not in dispute, the appeal must be accompanied by "a statement in writing of the amount of taxes the property owner proposes to pay." *See* TEX. TAX. CODE ANN. § 42.08(b-1).

Generally, with some exceptions not applicable in this case, "taxes are due on receipt of the tax bill and are delinquent if not paid before February 1 of the year following the year in which imposed." *Id.* § 31.02(a) (Vernon 2008); *see also id.* § 31.04 (Vernon 2008) (providing that delinquency date may be postponed in certain circumstances).  "Courts have repeatedly held that if the property owner does not pay any portion of the assessed taxes by the delinquency date, even if it later pays some or all of the taxes after the due date, the property owner has not substantially complied with section 42.08(b)."  *Carter*, 409 S.W.3d at 30–31 (quoting *U. Lawrence Boze' & Assocs.*, 368 S.W.3d at 27); *J.C. Evans Constr. Co. v. Travis Cent. Appraisal Dist.*, 4 S.W.3d 447, 451 (Tex. App.—Austin 1999, no pet.).  In this case, it is undisputed that KMR Minden did not pay any portion of the assessed taxes prior to the delinquency date, and it does not contend on appeal that it substantially complied with subsection 42.08(b).

Subsection 42.08(d) provides an exception to the prepayment requirement:

After filing an oath of inability to pay the taxes at issue, a party may be excused from the requirement of prepayment of tax as a prerequisite to appeal if the court, after notice and hearing, finds that such prepayment would constitute an unreasonable restraint on the party's right of access to the courts. On the motion of a party and after the movant's compliance with Subsection (e), the court shall hold a hearing to review and determine compliance with this section, and the reviewing court may set such terms and conditions on any grant of relief as may be reasonably required by the circumstances. If the court determines that the property owner has not substantially complied with this section, the court shall dismiss the pending action. If the court determines that the property owner has substantially but not fully complied with this section, the court shall dismiss the pending action unless the property owner fully complies with the court's determination within 30 days of the determination.

TEX. TAX CODE ANN. § 42.08(d); *see id.* § 42.08(e) (requiring movant, at least forty-five days before hearing to determine substantial compliance, to mail notice of hearing by certified mail to collector for each taxing unit that imposes taxes on property).

Subsection 42.08(d) does not define "the required content of the oath of inability to pay" or "the evidentiary standards to be met by a taxpayer seeking to be excused from prepayment under that subsection." *Carter*, 409 S.W.3d at 35. Subsection 42.08(d) is likewise silent regarding the "items a taxpayer must prove to show that he was financially unable to pay the taxes on the due date." *Id.* at 36. A property owner avoids forfeiting its right to a final determination of its suit if it substantially complies with either subsection 42.08(b), subsection 42.08(d), or some combination of both. *See U. Lawrence Boze' & Assocs.*, 368 S.W.3d at 26

(quoting *J.C. Evans Constr.*, 4 S.W.3d at 450). "'Substantial compliance' means that one has performed the 'essential requirements' of a statute and it 'excuse[s] those deviations from the performance required by statute which do not seriously hinder the legislature's purpose in imposing the requirement.'" *Carter*, 409 S.W.3d at 32 (quoting *U. Lawrence Boze' & Assocs.*, 368 S.W.3d at 27).

Because HCAD sought dismissal of the suit for lack of subject matter jurisdiction, it had the burden to establish that KMR Minden did not substantially comply with section 42.08. *See id.*; *Lee v. El Paso Cnty.*, 965 S.W.2d 668, 671 (Tex. App.—El Paso 1998, pet. denied) ("The party seeking dismissal for lack of jurisdiction maintains the burden of proof."). Whether a property owner has substantially complied with section 42.08 is a factual matter to be determined by the trial court on a case-by-case basis. *See U. Lawrence Boze' & Assocs.*, 368 S.W.3d at 26; *J.C. Evans Constr.*, 4 S.W.3d at 449. We construe tax statutes strictly against the taxing authority and liberally in favor of the taxpayer, and, if the statute is designed to relieve a property owner from the harshness of forfeiture, we liberally construe the statute to accomplish that purpose. *See U. Lawrence Boze' & Assocs.*, 368 S.W.3d at 26.

This Court has addressed whether a taxpayer presented sufficient evidence to demonstrate an inability to pay the assessed taxes on three occasions in the past year. In *Carter*, Carter presented bank records from January and February 2011

16

and testimony indicating that the balance of his checking account was $1,144.90 on January 27, 2011, and $886.23 on February 2, 2011, and that the assessed taxes on his property totaled $54,835.95. 409 S.W.3d at 36. This Court stated that "[t]he record contains no evidence calling into question the veracity of Carter's testimony regarding his inability to pay the taxes" and ultimately concluded that Carter demonstrated by a preponderance of the evidence that he was financially unable to pay the assessed taxes by the delinquency date. *Id.*

This Court next addressed this issue in *Palaniappan v. Harris County Appraisal District*, --- S.W.3d ---, No. 01-11-00344-CV, 2013 WL 6857983 (Tex. App.—Houston [1st Dist.] Dec. 31, 2013, no pet. h.). In that case, Palaniappan argued that the amount of taxes on the undisputed value of the property totaled around $7,000, and he paid $1,800 before the delinquency date and the remainder in installments over the next several months. *Id.* at *1, 2. Palaniappan's bank records, however, reflected that he had over $23,000 cash on hand as of the delinquency date, over $10,000 more than the amount of the assessed taxes. *Id.* at *7. This Court thus concluded that, unlike in *Carter*, evidence presented "call[ed] into question the veracity of the property owner's testimony regarding his inability to pay the taxes prior to the delinquency date." *Id.* This Court held that Palaniappan failed to demonstrate by a preponderance of the evidence that he was financially unable to pay the assessed taxes by the delinquency date. *Id.*

17

This Court most recently considered this issue in *Welling v. Harris County Appraisal District*, --- S.W.3d ---, No. 01-11-00874-CV, 2014 WL 503781 (Tex. App.—Houston [1st Dist.] Feb. 4, 2014, no pet. h.). Welling submitted bank records that demonstrated a negative account balance on January 31, 2011, but a positive account balance at the beginning of January 2011. *Id.* at *1. This Court noted that Welling was not required to pay the full amount of assessed taxes by the delinquency date, as he could have elected to pay the lesser of that amount or the taxes on the portion of the appraised value not in dispute, but Welling presented no evidence relevant to which was the lesser of the two amounts or whether he also would not have been able to pay an amount less than the full amount. *Id.* at *5. This Court also noted that tax bills are mailed by October 1, are due on receipt of the bill, and become delinquent only if not paid by the following February 1. *Id.* at *6 (citing TEX. TAX CODE ANN. §§ 31.02(a), 31.01). Welling presented bank records only for the months immediately preceding and following the delinquency date; he presented no evidence concerning whether he was unable to pay at least the undisputed portion of the taxes during October, November, or December 2010. *Id.* at *6. Welling also presented no evidence why a portion of the almost $73,000 deposited into his bank account during January could not have been used to pay at least some portion of the tax bill. *Id.* This Court also considered the fact that Welling knew as early as October that he would have difficulty making the tax

18

payment, but he did not inform the Harris County tax assessor/collector of this inability to pay at any point before the delinquency date. *Id.* This Court therefore concluded that Welling failed to demonstrate an inability to pay the assessed taxes. *Id.*

Here, KMR Minden argues that it filed a proper oath of inability to pay the assessed taxes and supported this oath with evidence, including financial records and the testimony of Scott Ray, a member of KMR Minden's general partner. Ray averred that KMR Minden was financially unable to pay the assessed taxes as of the delinquency date. As of January 31, 2012, the last day before the delinquency date, KMR Minden had a $12,039.16 tax bill but only $1,523.24 in its bank account. Ray generally listed KMR Minden's expenses, including mortgage payments, insurance payments, management company fees, employee salaries, utility services, and other costs and fees. He stated the consequences of failing to make those payments, such as foreclosure or cessation of utility services, and stated, "The amount of taxes due significantly exceeded the available funds for the next few months." Because KMR Minden still was not operating at a profit as of March 2012, Ray and two other members of KMR Minden's general partner loaned money to KMR Minden to cover the delinquent tax liability. The taxes were paid in full, plus penalties and interest, on April 19, 2012. Ray averred, "KMR Minden LP would have paid the taxes timely had the funds been available.

19

KMR Minden LP would not have willingly incurred penalties and interest that were in excess of 10% of the base tax had the funds been available."

KMR Minden submitted three promissory notes, one each from Ray and two other members of KMR Minden's general partner, each loaning KMR Minden $10,000 around April 1, 2012.  KMR Minden also submitted statements from its account at Chase Bank.  The statement for December 31, 2011, through January 31, 2012, reflected a beginning balance of $5,028.75, deposits of $14,559, and withdrawals of $18,064.51,[4] resulting in an ending balance of $1,523.24 as of January 31, 2012.  The statement for February 1, 2012, through February 29, 2012, reflected a beginning balance of $1,523.24, deposits of $20,407, and withdrawals of $19,352.33, resulting in an ending balance of $2,577.91.  The statement for March 1, 2012, through March 31, 2012, reflected a beginning balance of $2,577.91, deposits of $21,549, and withdrawals of $22,063.73, resulting in an ending balance of $2,063.18.  KMR Minden also attached a tax receipt, which demonstrated that it paid the assessed taxes in full on April 19, 2012.

---

[4]  Five of these withdrawals, totaling $4,629.76, were transfers to another checking account.  In finding of fact 17, the trial court found that KMR Minden made transfers to this particular account in similar amounts during February, March, and April 2012, but that KMR Minden provided no explanation for the purpose of these expenditures or why it could not have used these funds, which ultimately totaled $23,253.63, to pay the assessed taxes.  Ray did not discuss these transfers during his testimony at the hearing.

Ray also testified at the hearing on HCAD's plea to the jurisdiction and on KMR Minden's motion to determine substantial compliance with subsection 42.08(d). Ray testified that the property at issue is an income-producing property for KMR Minden. He stated that KMR Minden was solvent during the end of 2011 and beginning of 2012. He also, however, testified that KMR Minden had financial difficulties at that time and that its income generated from rental charges did not cover its expenses. KMR Minden attempted to raise money on multiple occasions by cash calls and loans from the individual members of its general partner. Three of the six members were able to loan KMR Minden $5,000 each in October 2011, but none of those funds were allocated for the payment of property taxes. Ray testified that, at that point in time, KMR Minden anticipated being able to pay its property taxes by the delinquency date.

According to Ray, the October 2011 loans from the partners did not solve KMR Minden's financial woes, and although KMR Minden continued to receive rental income throughout November and December 2011 and January 2012, this income was not enough to cover all expenses plus the property taxes. Ray testified that KMR Minden's expenses included a mortgage, utilities for the property, staff salaries, and maintenance costs, and he also testified that if those expenses were not timely paid, KMR Minden would suffer severe consequences. Ray stated that, at the end of January 2012, KMR Minden had approximately $1,500 in its bank

account, which was not enough to cover the $12,039.18 tax bill. Ray further stated that KMR Minden was not financially able to pay its 2011 taxes in a timely manner. KMR Minden began soliciting additional loans from the members in December 2011 or January 2012, but it did not receive those funds until April 2012, and it paid the delinquent tax bill immediately thereafter.

On cross-examination, Ray agreed with HCAD's counsel that KMR Minden received its tax bill in the fall of 2011 and that, during that time, KMR Minden paid other bills instead of the tax bill. Ray had the following exchange with HCAD's counsel:

> [HCAD's counsel]: If you'd wanted to, if you'd really wanted to, you could've sat down and wrote a check and paid your taxes, couldn't you?
>
> [Ray]: That would've implied a choice to not pay something else that would've caused immediate concern to the business.

Ray agreed that KMR Minden never tried to work out a payment plan with its other creditors, and it never tried to enter into an installment plan with the Harris County tax assessor/collector. Ray also agreed that KMR Minden received sufficient deposits in the months leading up to the delinquency date to pay its tax bill, "[i]f [KMR Minden] chose to pay nothing else."

We conclude that this case is most analogous to *Welling*, a case in which this Court found that the property owner did not demonstrate an inability to pay even

though he had a negative bank account balance on the delinquency date. *Id.* at \*5. Here, KMR Minden had a positive account balance as of the delinquency date, albeit not enough funds to cover the entire tax bill. KMR Minden presented no bank records demonstrating an inability to pay the assessed taxes for October through December 2011. These are, contrary to KMR Minden's assertions, relevant to the question of inability to pay, as property owners begin receiving their tax bills, which are due on receipt, in October. *See id.* at \*6. Although KMR Minden presented evidence that it had expenses such as the mortgage, utilities, employee salaries, and maintenance costs, and that it lacked the funds to satisfy these expenses plus the assessed taxes, the evidence also demonstrated that on several occasions each month KMR Minden transferred several thousand dollars to a specific checking account. As the trial court found in finding of fact number 17, KMR Minden made no attempt to explain these transactions, and it presented no evidence of the purpose of these transfers and no evidence that these funds could not be used to pay the tax bill instead. *See id.* ("Moreover, the bank records show that $72,562.29 was deposited into the bank account during the month of January 2011, and Welling introduced no evidence regarding why some portion of this money was not, or could not have been, used for prepayment of some portion of the tax bill.").

Also as in *Welling*, KMR Minden presented no evidence concerning what it considered to be the undisputed value of the property, the amount of taxes on this value, whether this amount was less than the amount of taxes actually assessed, or whether it would have been unable to pay the lesser amount.[5]  *See id.* at *5. Finally, Ray testified that KMR Minden had financial difficulties all throughout the fall of 2011.  He admitted that KMR Minden made no attempt to contact the Harris County tax assessor/collector regarding its inability to pay prior to the delinquency date.  *Id.* at *6.

We conclude that the trial court's findings and conclusions that KMR Minden failed to demonstrate an inability to pay its taxes and that section 42.08's prepayment requirement did not constitute an unreasonable restraint on its access to the courts were supported by evidence in the record.  We therefore hold that the trial court did not err in granting HCAD's plea to the jurisdiction.

We overrule KMR Minden's first, second, third, fourth, and fifth issues.[6]

---

[5]     If a property owner elects to prepay the taxes on the undisputed value of the property, instead of on the full appraised value, the owner must file with its appeal a statement of the amount of taxes it proposes to pay.  *See* TEX. TAX. CODE ANN. § 42.08(b-1) (Vernon Supp. 2013).  KMR Minden did not do this.  However, failure to do so does not constitute jurisdictional error.  *See id.*  Thus, KMR Minden, upon discovering that it was unable to pay the taxes in full by the delinquency date, could have paid the taxes on the undisputed value of the property, and its failure to file the required statement contemporaneous with its appeal would not provide grounds for dismissal for lack of jurisdiction.

[6]     Because we conclude that the trial court properly granted HCAD's plea to the jurisdiction, we need not address KMR Minden's ninth, tenth, and eleventh issues,

**Challenges to Specific Findings of Fact**

In its eighth issue, KMR Minden challenges the sufficiency of the evidence supporting four specific findings of fact: findings 10, 17, 18, and 19. We have already addressed finding 17 and determined that evidence in the record supports this finding.

In finding 10, the trial court found, "KMR's appeal was not accompanied by any statement in writing on the amount of ad valorem taxes it proposed to pay under Section 42.08(b) of the Texas Property Tax Code." KMR Minden contends that this finding "is clearly refuted by the Plaintiff's Original Petition in paragraph V." Paragraph V of KMR Minden's original petition states: "Pursuant to Section 42.08 Plaintiff intends on timely paying all taxes due on the property, or the taxes due on the undisputed portion of the value of the property, or, if unable to timely pay the lesser of these amounts, Plaintiff requests relief from the Court."

Subsection 42.08(b-1) applies only when a property owner elects to pay the amount of taxes due on the portion of the taxable value of the property not in dispute and provides, "The appeal filed by the property owner must be accompanied by a statement in writing of the amount of taxes the property owner proposes to pay." TEX. TAX CODE ANN. § 42.08(b-1). KMR Minden made only a

---

which challenge thirteen conclusions of law. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002) (holding that if appellate court determines that conclusion of law is erroneous but that trial court rendered proper judgment, erroneous conclusion of law does not require reversal).

general, blanket statement in its original petition that it would either pay all of the assessed taxes, pay the taxes on the undisputed portion of the property's value, or seek relief from the trial court if it could not pay the lesser amount. KMR Minden never elected to pay taxes only on the undisputed portion of the appraised value, and it never made a statement regarding the amount of taxes that it proposed to pay. Finding 10 is therefore supported by the record.[7]

In finding 18, the trial court found, "The evidence shows that KMR had sufficient funds to timely pay its ad valorem taxes, but chose to pay other bills instead. Therefore, KMR voluntarily elected not to pay its ad valorem taxes prior to delinquency." The bank records submitted to the trial court and Ray's testimony at the hearing demonstrated that KMR Minden was solvent: it was an ongoing business that received rental income from tenants each month. The bank records presented demonstrated a positive balance at the end of each month. Ray testified generally about KMR Minden's expenses and offered explanations as to why it chose to pay those expenses instead of its tax bill before the delinquency date, but the evidence reflects that KMR Minden had available funds that it used to pay

---

[7]     We also note that non-compliance with subsection 42.08(b-1) does not affect the determination of whether the property owner substantially complied with subsection 42.08(d). *See Carter v. Harris Cnty. Appraisal Dist.*, 409 S.W.3d 26, 34 (Tex. App.—Houston [1st Dist.] 2013, no pet.) ("Because he did not elect to pay only the undisputed amount, Carter was required, by default, to pay the full amount of taxes by the delinquency date, *or to comply with subsection 42.08(d).*") (emphasis in original).

26

other expenses and that it did not set aside to satisfy its tax liability. The record therefore supports finding 18.

In finding 19, the trial court found, "Three partners of the General Partner of KMR-Minden LP (Chuck Hoskins, Frances Neubig, and Scott A. Ray) loaned KMR a total of $30,000 in April of 2012. No credible evidence was offered as to why these partners could not have loaned funds to KMR prior to the delinquency date for paying its ad valorem taxes." KMR Minden's own evidence attached to its motion to determine substantial compliance supports the first sentence of finding 19. KMR Minden attached three promissory notes between KMR Minden and three of the members of its general partner, in which the members promised to loan KMR Minden $10,000 each. The members signed each of these promissory notes in the beginning of April 2012. Ray testified that KMR Minden began soliciting additional funds from the members in December or January, "when we began to understand what the [financial] situation was," but he gave no rationale as to why the members did not make the loans until April other than to state that it took time to "build a business case" to convince the members why they needed to make another loan to KMR Minden so soon after the ones they made in October 2011. The trial court, as the fact finder, had the opportunity to observe Ray's demeanor at the hearing, and it found his testimony not credible, as it was within its discretion to do.

KMR Minden argues on appeal that this finding "attempt[s] to muddle the distinction between the Appellant with the individuals who are limited partners in the venture" and notes that the Tax Code requires that the property owner—which, here, is the entity KMR Minden, not the individual members—demonstrate an inability to pay the assessed taxes. Finding 19 does not, however, "muddle the distinction" between KMR Minden and the members of its general partner. This finding instead merely identifies the members as a source of income for KMR Minden and finds that KMR Minden presented no credible evidence for why it could not have obtained a loan from these three members, all of whom were willing to loan money to the entity, before the delinquency date. This finding in itself does not require the individual members to also demonstrate their inability to pay KMR Minden's tax liability. We conclude that the record supports finding 19.

We overrule KMR Minden's eighth issue.

## Conclusion

We affirm the judgment of the trial court. All pending motions are dismissed as moot.


Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Sharp, and Huddle.

28